ORTEGA, P.J.
*10 In this consolidated appeal, defendant challenges his conviction for unlawful possession of oxycodone, ORS 475.834, assigning error to the trial court's denial of his motion to suppress.[1] He asserts that the arresting officer's question-whether defendant possessed "any more" marijuana-constituted a custodial interrogation and, because he was not provided with Miranda warnings, it violated his rights under Article I, section 12, of the Oregon Constitution. The state responds that there was no Miranda violation, because the question was "normally attendant to arrest and custody" and therefore within an exception to the Miranda requirement. We conclude that, because the question asked by the officer was designed to elicit incriminating information, Miranda warnings were required and, accordingly, we reverse and remand.
We review the denial of a motion to suppress for legal error and are bound by the trial court's express factual findings if evidence in the record supports them. State v. Ehly , 317 Or. 66, 74-75, 854 P.2d 421 (1993). Accordingly, we state the facts consistently with that standard.
Deputy Forte arrested defendant on an outstanding warrant and handcuffed him, but did not administer Miranda warnings, because he was not "investigating him at that point for any [other] crimes." After defendant was in handcuffs, Forte performed a cursory search for weapons and, not finding any, he and defendant then "engaged in casual conversation." Defendant told Forte that he was on his way to his girlfriend's house, and Forte asked him "if he had anything that he wanted to leave with his girlfriend at which point [defendant] said that he had a little bit of marijuana that he wished to leave with her." Even after defendant admitted to possessing marijuana, which was at that time illegal,[2] Forte still did not administer Miranda *11 warnings because "at that point [he was not] charging him with new crimes." Forte refused defendant's request to leave the marijuana with his girlfriend and asked if he had "any more" on him. Defendant said no, and Forte then asked him to consent to a search to ensure that he did not "have any more so that he [did not] take it to jail with him." Defendant consented and, after another pat-down, Forte discovered six oxycodone pills. Forte administered Miranda warnings and asked defendant if he had a prescription *1022 for the pills. Defendant replied that he did not. Forte then cited defendant for possession and took him to jail on both the warrant and the possession citation.
Defendant moved to suppress the oxycodone pills, arguing that his consent to the search that led to their discovery derived from questioning administered without the warnings required by Article I, section 12. The trial court found Forte credible, found that the question about "any more" marijuana was not asked in order to lead defendant to incriminate himself, and concluded that Miranda warnings were not required once defendant was handcuffed. Specifically, the court stated:
"Forte indicated that he was not investigating any new crime. He simply was attempting to get the contraband that would not be allowed in the jail because [defendant] was going to * * * the Douglas County Jail for that, on that warrant."
The court also stated that it did not
"find that is a question * * * to get [defendant] to incriminate himself because basically the Deputy wouldn't leave anything that's illegal with, with the girlfriend. So [he was] asking him if he has anything and most people these days have items of value such as a cell phone on them or that, that type of thing. So I [do not] find that that was asked to get [defendant] to incriminate himself."
Ultimately, the court denied defendant's motion to suppress, concluding that warnings were not required and the evidence was lawfully obtained after defendant voluntarily consented to a search. Defendant pleaded no contest to the charge of unlawful possession of oxycodone, reserving his *12 right to challenge the trial court's ruling on appeal. He now asserts the same arguments for suppression as he did below.
Article I, section 12, provides that "[n]o person shall be * * * compelled in any criminal prosecution to testify against himself." To protect that right, a person who is in full custody, or under compelling circumstances, and subject to an interrogation must be given Miranda warnings. State v. Smith , 310 Or. 1, 7, 791 P.2d 836 (1990). However, there is an exception to the Miranda requirement for questions that are "normally attendant to arrest and custody"-i.e. , questions that serve a noncriminal, noninvestigatory purpose-so long as the officer's question is not designed to elicit any incriminating information. State v. Cunningham , 179 Or.App. 498, 504, 40 P.3d 535, rev. den. , 334 Or. 327, 52 P.3d 435 (2002).
On appeal, the parties do not dispute that defendant was in custody. Instead, they disagree about whether Forte's question was one "normally attendant to arrest and custody." The state maintains that it was; defendant, citing our decisions in State v. Pender, 181 Or.App. 559, 562, 47 P.3d 63 (2002), and State v. Grover , 193 Or.App. 165, 174, 90 P.3d 8 (2004), asserts that asking if a person is in possession of controlled substances does not fall within the exception.
In Cunningham , we concluded that an officer's question, during the course of an arrest, about weapons and sharp objects was "normally attendant to arrest and custody." 179 Or.App. at 504, 40 P.3d 535. In reaching that conclusion, we noted that Oregon had adopted the definition of "interrogation" set out by the United States Supreme Court in Rhode Island v. Innis , 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) :
" '[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' "
179 Or.App. at 501, 40 P.3d 535 (quoting Innis , 446 U.S. at 301, 100 S.Ct. 1682 ). The defendant in Cunningham argued that questions that are "reasonably likely to elicit incriminating" information cannot be questions that are "normally attendant to arrest and *13 custody." 179 Or.App. at 501-02, 40 P.3d 535. We rejected the logic of that argument, and explained that it was
"at odds with the Court's reasoning in Innis. If defendant were correct, questions that are normally attendant to arrest and custody would never constitute interrogation, as Innis defined that term, because *1023 they would never be reasonably likely to elicit an incriminating response. If that were true, there would have been no reason for the Court to identify questions "normally attendant to arrest and custody" as an exception to its definition of interrogation. Rather, it would have been sufficient for the Court to say simply that interrogation consists of questions, words, and actions reasonably likely to elicit an incriminating response without also identifying an exception for questions normally attendant to arrest and custody. Conversely, by expressly excepting questions normally attendant to arrest and custody from its definition of interrogation, the Court implied that some questions normally attendant to arrest and custody may also be reasonably likely to elicit incriminating information."
Id. at 502-03 (emphasis added). We went on to note that Pennsylvania v. Muniz , 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), confirmed what was implied in Innis :
"The plurality [in Muniz ] thus recognized that, even though the exception for questions that are normally attendant to arrest and custody may include questions that are reasonably likely to elicit incriminating information, it does not include questions that are designed to do so. It follows that, if the police ask an otherwise permissible question with the intent to elicit incriminating information, the answer will be suppressed unless the police have first given the suspect Miranda warnings."
179 Or.App. at 504, 40 P.3d 535 (emphasis in original; internal citations omitted). Cunningham does not hold that the inverse is true-i.e. , that it also follows that, if police ask a question without that intent , the answer will not be suppressed. Rather, Cunningham leaves open the possibility that a question could still be "designed" to elicit incriminating evidence notwithstanding the officer's credible testimony about his subjective, "noninvestigatory" purpose.
In Pender , we refined the exception by concluding that a question about whether a defendant possessed controlled *14 substances was not a question "normally attendant to arrest and custody." 181 Or.App. at 563, 47 P.3d 63. There, the state advanced the argument that the reason for the question was to ensure that the defendant did not bring contraband into the jail, thereby supplying contraband in violation of ORS 162.185.[3] Id. However, we reasoned that an arrestee who is in possession of contraband upon being booked in the jail is not necessarily guilty of supplying contraband and, further, that if the state's argument was correct, the question was indeed asked in order to elicit the exact information used to prosecute the defendant for supplying contraband. Accordingly, we concluded that the question necessitated Miranda warnings. Id.
Likewise, in Grover , we determined that the defendant should have been given Miranda warnings before the officer asked him if he had any weapons or narcotics on him. 193 Or.App. at 174, 90 P.3d 8. We applied the analysis from Pender to conclude that the question about narcotics was designed to elicit incriminating information. Id.
Defendant's argument here is straightforward: that, as in Pender and Grover , once Forte arrested him and placed him in handcuffs, Forte should have administered Miranda warnings before asking defendant if he had "any more" marijuana on him. In defendant's view, even if the purpose of Forte's question was to determine if he possessed any contraband that might be brought into the jail, the question was designed to elicit incriminating information that could be used to charge him with an additional crime under ORS 162.185.
The state responds that, notwithstanding Pender and Grover , Forte's question was not designed to further a criminal investigation. The state relies on Cunningham to assert that, the "question normally attendant to arrest *1024 and custody" exception is based on the purpose for which *15 the question is asked, not the question's potential to elicit an incriminating response. According to the state, as long as the question is not designed to elicit incriminating evidence or the police did not intend to elicit incriminating information, then Miranda warnings are not required. The state asserts here, that based on Forte's testimony, which the trial court found credible, his question was not designed to charge defendant with new crimes or elicit information from him, but rather to ensure that he did not enter the jail with contraband in violation of ORS 162.185. The state argues that questions about controlled substances do not necessarily require warnings but, alternatively, it urges us to clarify or disavow Pender and Grover to the extent they conflict with Cunningham .
We conclude that Forte's question is indistinguishable from those questions in Pender and Grover that we determined were not "normally attendant to arrest and custody." The only evident purpose for Forte's question was to do exactly what Miranda warnings aim to address: elicit incriminating information that could be used to charge defendant with an additional crime. Although an officer's subjective investigatory purpose (or lack thereof) bears on whether a question is designed to elicit incriminating information, the absence of subjective intent is not dispositive. Under Pender and Grover , we have held that a question about the unlawful possession of controlled substances is a question that, by its very nature, evidences an investigatory purpose and is therefore "designed" to elicit incriminating information. We reject the state's invitation to disavow Pender and Grover . Consequently, any evidence obtained as a result of Forte's question should not have been admitted at trial and despite the trial court's finding regarding the officer's subjective intent, it erred when it denied defendant's motion to suppress.[4]
In Case No. 15CR06546, conviction for unlawful possession of oxycodone reversed and remanded; otherwise affirmed. In Case No. 16CR09233, affirmed.

In Case No. 15CR06546, the trial court entered a judgment of conviction for unlawful possession of oxycodone and a judgment of contempt. In Case No. 16CR09233, the court entered a judgment of conviction for failure to appear, ORS 133.076. On appeal, defendant seeks relief only from his unlawful possession conviction.

See former ORS 475.864(3)(c) (2013), repealed by Or. Laws 2017, ch. 21, § 126 (unlawful to possess less than one ounce of marijuana).

ORS 162.185 provides:
"(1) A person commits the crime of supplying contraband if:
"(a) The person knowingly introduces any contraband into a correctional facility, youth correction facility or state hospital; or
"(b) Being confined in a correctional facility, youth correction facility or state hospital, the person knowingly makes, obtains or possesses any contraband.
"(2) Supplying contraband is a Class C felony."

The state does not argue as an alternative basis for affirmance that defendant's consent to search attenuated the physical evidence and incriminating statements from the constitutional violation.