SHORR, J.
*565 *882 This case is before us for the third time, on remand from the Supreme Court with instructions to consider whether the trial court erred in denying defendant's motion to suppress statements that he made before he was given Miranda warnings in violation of Article I, section 12, of the Oregon Constitution. We are asked to consider this case in light of the Supreme Court's decision in State v. Boyd , 360 Or. 302, 380 P.3d 941 (2016).
At trial, defendant entered a conditional guilty plea to one count of identity theft, ORS 165.800, one count of theft in the first degree, ORS 164.055, and one count of escape in the second degree, ORS 162.155, after the trial court denied his motion to suppress. The conditional guilty plea to all three charges was subject to defendant's right to appeal the trial court's denial of his motion to suppress. In a consolidated case, defendant now appeals the two judgments convicting him of those crimes. On appeal, we conclude that the trial court erred in denying defendant's motion to suppress and, accordingly, reverse and remand.
We review the denial of a motion to suppress for legal error and are bound by the trial court's express factual findings if evidence in the record supports them. State v. Ehly , 317 Or. 66, 74-75, 854 P.2d 421 (1993). We state the following facts consistently with that standard.
Sergeant Majetich of the Redmond Police Department was dispatched to a report of a car break-in in the back parking lot of a Redmond hotel. Upon arrival, Majetich contacted the victims and immediately began searching the area for the stolen property. During that search, Majetich noticed that there were two gray storage totes and a compound bow inside a fenced portion of a storage facility just north of the location of the vehicle break-in. Based on the owner's description, Majetich immediately recognized those items as belonging to the owner of the car that had been broken into.
Officers eventually contacted the storage facility and received video showing two individuals-one of whom was identified by the officers as defendant-moving items *883 from the corner where the police had observed the stolen property into a storage unit. After reviewing the video and identifying defendant, officers contacted defendant's parole officer, who gave them information about a car connected to defendant. The parole officer indicated that he wanted defendant detained for unrelated parole violations.
Based on the information that the investigating officers had obtained, Majetich began making periodic checks of the storage facility, looking for the car associated with defendant. During one of those checks, Majetich found defendant's car at the storage facility. Majetich approached the storage facility and saw defendant near his car. He called for backup and, once it arrived, entered the storage facility and approached defendant. Majetich immediately told defendant that he was being detained and placed defendant in handcuffs. After defendant was placed in handcuffs, Majetich informed defendant that "he was being investigated in regard to some thefts that occurred in the area" that morning. Majetich also told defendant that his parole officer was looking for him and that defendant "had been observed on video in the area of the crime and putting items into [a] storage unit." In response to those statements, defendant indicated that he had been in that area earlier in the morning with the other person identified in the video, that the purportedly stolen items were his, and that, in any event, it was the person he was with in *566 the video who had put the items in the corner of the storage facility and defendant was just retrieving them. Majetich conducted a patdown of defendant and only then issued him Miranda warnings.
Defendant was eventually charged with a number of property crimes related to the thefts as well as unrelated charges of escape in a separate case. In the theft case, defendant filed a motion to suppress, among other things, the statements that he made to Majetich before he was given Miranda warnings. Following a hearing, the court denied defendant's motion to suppress. At that hearing, regarding the statements he made to defendant prior to issuing Miranda warnings, Majetich stated that he normally advises suspects why they are being detained and the evidence underlying that detention.
*884 After the hearing, defendant's theft and escape cases were consolidated pursuant to a plea agreement. As noted, defendant's pleas were conditioned on his right to appeal the denial of his suppression motion.
On appeal, defendant assigns error only to the denial of his motion to suppress his pre-Miranda statements. He argues that the trial court erroneously concluded that they were not the product of custodial interrogation. We agree.
Article I, section 12, states, in part, that "[n]o person shall * * * be compelled in any criminal prosecution to testify against himself." The Article I, section 12, right against self-incrimination "adhere[s] when a suspect is subject to custodial interrogation." State v. Scott , 343 Or. 195, 201, 166 P.3d 528 (2007). Consequently, under Article I, section 12, the police must give a defendant who is subject to custodial interrogation Miranda -like warnings prior to interrogation. State v. Moore/Coen , 349 Or. 371, 382, 245 P.3d 101 (2010), cert. den. , 563 U.S. 996, 131 S.Ct. 2461, 179 L.Ed.2d 1225 (2011). Here, defendant's statements were made before Majetich gave defendant Miranda warnings. Thus, we must decide whether defendant was subject to custodial interrogation when he made the statements that he now seeks to suppress.
To determine whether a person is subject to custodial interrogation, we apply a two-step test: First, was the person in custody? Second, was the person subject to interrogation? See Scott , 343 Or. at 201, 166 P.3d 528 ("[s]eparate inquiries extend from" the term "custodial" and the term "interrogation"). In this case, defendant argues, and the state concedes, that defendant was in custody at the time of his questioning.[1] We agree. See, e.g. , State v. Satchell , 209 Or. App. 809, 810-11, 150 P.3d 4 (2006) (holding that the defendant was in "compelling circumstances" when he was hand-cuffed). Thus, the issue in this case is whether Majetich's statements to defendant constituted "interrogation" under Article I, section 12.
*885 Whether an officer's statements "constitute[ ] unlawful 'interrogation' for Article I, section 12, purposes depends on whether 'the substance of the [statements made] to defendant and the manner in which those [statements] were [made]' demonstrated that they were 'likely to elicit some type of incriminating response.' " Boyd , 360 Or. at 319, 380 P.3d 941 (quoting Scott , 343 Or. at 203-04, 166 P.3d 528 (third brackets in original) ). An "incriminating response, in turn, means any inculpatory or exculpatory response that the prosecution later may seek to introduce at trial." Scott , 343 Or. at 203, 166 P.3d 528 (internal quotation marks omitted).
Here, there are two portions of Majetich's pre-Miranda statements that we must analyze. First, we examine the portion of Majetich's statements indicating that defendant was being detained as a suspect in a theft that Majetich was investigating. Second, we examine the portion of Majetich's statements indicating that defendant was identified on a surveillance video in the area of the crime moving items into a storage unit.
We begin by examining whether Majetich interrogated defendant by explaining *567 to defendant that he was being detained because he was being investigated for a theft. Under Article I, section 12, an interrogation does not include questions "normally attendant to arrest and custody." State v. Cunningham , 179 Or. App. 498, 501-03, 40 P.3d 535, rev. den. , 334 Or. 327, 52 P.3d 435 (2002). However, that exception does not extend to an officer's questions that are "designed" to elicit incriminating information. Id . at 504, 40 P.3d 535 ; see also State v. Lanier , 290 Or. App. 8, 13, 413 P.3d 1020 (2018) (stating same). In Cunningham , an officer's question during an arrest that served a noncriminal, noninvestigatory purpose fell squarely "within the class of questions that are normally attendant to arrest and custody" because it was not "designed to elicit an incriminatory response." 179 Or. App. at 505, 40 P.3d 535. In Lanier , we concluded that an officer's subjective intent in asking the question bears on whether the question was designed to elicit an incriminatory response, but the absence of subjective investigatory intent alone is not dispositive. 290 Or. App. at 15, 413 P.3d 1020. Instead, we noted that we also must consider whether the question, "by its very nature, evidences an investigatory purpose." Id . *886 The answer here is obvious. The officer's statement merely informing defendant of the criminal activity for which the officer was investigating and detaining defendant was not designed to elicit an incriminatory response or a statement that, by its very nature, evidenced an investigatory purpose. As Majetich indicated, notifying detainees why they are being a detained is a routine part of his procedure when he detains someone. There is no evidence that Majetich's statement "appeared designed to confront defendant and prompt a substantive response." State v. Schrepfer , 288 Or. App. 429, 439, 406 P.3d 1098 (2017). Further, merely notifying a detainee of the crime for which he or she is being investigated is not the type of statement that categorically calls for an incriminating response. Indeed, once a suspect is arrested, Oregon law requires that an officer "inform the person to be arrested of the officer's authority and reason for the arrest" either at the time of arrest or "as soon as practicable." ORS 133.235(3) ; cf. Devenpeck v. Alford , 543 U.S. 146, 155, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (stating in an analysis under the Fourth Amendment to the United States Constitution that, "[w]hile it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required"). Majetich was not interrogating defendant when Majetich merely informed him of the reasons for his detention.
We turn next to whether Majetich's later statement indicating that defendant had been identified in a surveillance video in the area of the crime moving property into a storage unit constituted interrogation. That statement is not one "normally attendant to arrest and custody" and, thus, does not fall within the exception stated above in Cunningham . Instead, whether that statement constitutes "unlawful interrogation" for Article I, section 12, purposes depends on whether the substance of the statement made to defendant and the manner in which that statement was made demonstrated that the statement was "likely to elicit some type of incriminating response." Boyd , 360 Or. at 319, 380 P.3d 941 (internal quotation marks and brackets omitted). Here, looking to both the substance of Majetich's statement and *887 the manner in which it was made, we conclude that it constitutes an interrogation.
Confronting a detainee with the evidence against him or her can constitute interrogation. State v. Bradbury , 80 Or. App. 613, 616-17, 723 P.2d 1051, rev. den. , 302 Or. 342, 728 P.2d 867 (1986) ; State v. Guayante , 63 Or. App. 212, 217-18, 663 P.2d 784, rev. den. , 295 Or. 541, 668 P.2d 384 (1983). However, the "manner in which" the defendant is confronted with that evidence affects the analysis. Boyd , 360 Or. at 319, 380 P.3d 941.
For instance, in Guayante , we held that an officer interrogated the defendant when the officer, without prompting from the defendant, made a statement using evidence to connect the defendant to the crime. 63 Or. App. at 215, 663 P.2d 784. In that case, we held that the officer interrogated the defendant when, while in the defendant's house, he pointed to evidence that he found in the *568 defendant's house and stated, "Look, we already know you did it. Here is the stuff you took from him." Id. at 217-18, 663 P.2d 784. In contrast, in Bradbury , we held that an officer did not interrogate the defendant when, while in a police station and in response to an unprompted request from the defendant, the officer pointed to items that the defendant was accused of stealing when telling the defendant that he was being charged with burglary without also indicating how that evidence tied the defendant to the crime. 80 Or. App. at 615-17, 723 P.2d 1051.
Here, Majetich's statement was more like the statement in Guayante than like the statement in Bradbury . First, Majetich's statement was not made in response to an unprompted request from a defendant like the statement made by the officer in Bradbury . Instead, Majetich volunteered on his own the information that defendant had been identified on surveillance video in the area of the crime. Further, unlike in Bradbury , Majetich's statement was not made as part of the statement letting defendant know the criminal conduct for which he was being detained-a type of statement that we have already noted is "normally attendant to arrest and custody." Majetich could have, and did, inform defendant about the conduct for which he was being detained without discussing the video. Instead, like in Guayante , Majetich's statement used the video to explicitly *888 connect defendant to the crime and, thus, to confront defendant with his guilt. The unprompted nature of Majetich's statement plus the fact that it was being used to let defendant know how and why he had been connected with the crime he was accused of committing created circumstances under which a reasonable officer in Majetich's circumstances should have known that the officer's statements were likely to elicit an incriminating response. Boyd , 360 Or. at 319, 380 P.3d 941. As a result, Majetich's statements confronting defendant with the fact that he had already been identified on video in the area in which the crime had been committed around the time that it took place constituted an interrogation under Article I, section 12, and the statements made by defendant after that statement were made were the product of a custodial interrogation.
Because the pre-Miranda statements that defendant made after Majetich confronted defendant with the fact that defendant "had been observed on video in the area of the crime and putting items into [a] storage unit" were the result of custodial interrogation, they were gathered in violation of defendant's Article I, section 12, right against self-incrimination. Because defendant conditionally pleaded guilty to all three counts subject to his right to appeal the denial of his motion to suppress, we reverse and remand the judgment of conviction on each of those counts. Accordingly, the trial court erred in denying defendant's motion to suppress those statements.
Reversed and remanded.

Police must give Miranda warnings to a person who is either in "full custody or in circumstances that create a setting which judges would and officers should recognize to be compelling." State v. Roble-Baker , 340 Or. 631, 638, 136 P.3d 22 (2006) (internal quotations omitted). As noted, there is no dispute that defendant was in full custody, so we need not address the issue of compelling circumstances.