Submitted February 11, 2020, reversed and remanded May 5, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DIMITRY FEDORIVCH SHEVYAKOV,
*Defendant-Appellant.*

Multnomah County Circuit Court
17CR59017; A167831

489 P3d 580

Defendant was arrested for driving under the influence of intoxicants, ORS 813.010. Shortly thereafter, defendant invoked his *Miranda* rights to remain silent and to counsel. Later, police asked defendant if he would consent to performing physical field sobriety tests (FSTs). Defendant eventually consented. Before trial, defendant moved to suppress the evidence of his performance on the FSTs and derivative evidence. The trial court denied the motion. Defendant challenges that denial on appeal. He contends that police impermissibly interrogated him in violation of Article I, section 12, of the Oregon Constitution, after he had invoked his *Miranda* rights. *Held*: The trial court erred in denying defendant's motion to suppress evidence obtained through the FSTs. The police request for consent to perform the FSTs was an interrogation that was impermissible after defendant invoked his *Miranda* rights because a refusal to perform the FSTs would have been an incriminating response that the prosecution would likely seek to introduce at trial.

Reversed and remanded.

Benjamin N. Souede, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Brett J. Allin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and E. Nani Apo, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and Powers, Judge, and Hadlock, Judge pro tempore.

LAGESEN, P. J.

Reversed and remanded.

Hadlock, J. pro tempore, concurring.

**LAGESEN, P. J.**

Defendant fell asleep at the wheel while parked at an intersection in Fairview. The ensuing encounter with police led, ultimately, to convictions for driving under the influence of intoxicants (DUII), ORS 813.010 (Count 1); unlawful possession of heroin, ORS 475.854 (Count 2); and unlawful possession of a controlled substance, ORS 475.752 (Count 3). He assigns error to the trial court's denials of his motions (1) to suppress evidence of his physical performance on the field sobriety tests (FSTs) and related derivate evidence; (2) in arrest of judgment on Counts 2 and 3; and (3) for a new trial on Counts 2 and 3. We reverse and remand, concluding that defendant's motion to suppress must be granted because he was unconstitutionally interrogated, in violation of Article I, section 12, of the Oregon Constitution, when a police officer asked him to perform the FSTs after defendant invoked his *Miranda* rights.

*Motion to suppress.* Defendant first contends that the trial court erred in denying his motion to suppress the evidence of his physical performance on the FSTs and evidence obtained as a product of a search warrant that was based, in part, on evidence of defendant's FST performance. Defendant's theory is that the evidence was obtained in violation of his Article I, section 11, of the Oregon Constitution right to counsel and also in violation of his Article I, section 12, *Miranda* right to counsel. We review by "accepting the trial court's supported factual findings and determining 'whether the trial court applied legal principles correctly to those facts.'" *State v. Soto-Navarro*, 309 Or App 218, 223, 482 P3d 150 (2021) (quoting *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993)).

This case began when Officer Shropshire found defendant parked at an intersection in Fairview and asleep at the wheel of his car. Detecting signs of intoxication, Shropshire arrested defendant for DUII and read him his *Miranda* rights. Defendant spoke to Shropshire briefly but then invoked his *Miranda* right to remain silent and his *Miranda* right to counsel, telling him: "I don't want to talk [to] you guys anymore. I want to speak with my attorney."

After taking defendant to the police station, Shropshire asked if defendant would consent to performing the physical FSTs. Defendant was nervous but agreed after Shropshire explained that he could tell the difference between nervousness and impairment. Shropshire then used the evidence obtained from defendant's performance of the FSTs to obtain a warrant that, in turn, revealed that defendant possessed heroin and Xanax.

Before trial, defendant moved to suppress the evidence of his performance on the FSTs and the derivative evidence obtained under the warrant. Defendant's theory was that, after he invoked his *Miranda* rights, Shropshire impermissibly interrogated him in violation of those rights by requesting that he consent to performing the physical FSTs and then, when defendant was unsure about consenting, reassuring him that he could differentiate between nervousness and impairment.

The trial court denied the motion. It ruled that "[t]here's no problem with asking the defendant to perform a Field Sobriety Test after—after *Miranda* has been given and invoked. The *** Oregon courts have consistently said that the physical aspects of [the FSTs] are not testimonial." Although the court concluded that defendant's rights were not violated, it suppressed any verbal statements that defendant made while performing the FSTs.

On appeal, defendant challenges that ruling, making two arguments in support of suppression. The first is one he did not make to the trial court: that Shropshire violated his Article I, section 11, rights under *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988), when Shropshire did not offer him the opportunity to consult with counsel before deciding whether to perform the FSTs. The second is one that he did: that by asking defendant to consent to performing the FSTs and reassuring defendant that he could differentiate between nervousness and impairment, Shropshire impermissibly interrogated him in violation of Article I, section 12, after he had invoked his *Miranda* rights. In particular, defendant argues that Shropshire's request and statements were interrogation under *State v. Boyd*, 360 Or 302, 312, 316-19, 380 P3d 941 (2016)—that is, reasonably likely to elicit

an incriminating response—because, in defendant's view, they were reasonably likely to elicit a refusal. Defendant reasons that a refusal is, in and of itself, an incriminating response because it is something from which an adverse inference of guilt may be drawn.

The state responds first that defendant's Article I, section 11, argument is not preserved and does not demonstrate plain error. It points out that, in *Spencer*, the case on which defendant relies, the court held that Article I, section 11, required that a DUII suspect be given an opportunity to consult with a lawyer before deciding whether to take a breath test, but did not address or hold that the same opportunity to consult with counsel must be afforded to a suspect asked to perform the FSTs. Thus, the state asserts, any error in declining to suppress the FST evidence under *Spencer* is not an obvious one correctable as plain error.

As for the FSTs, the state contends that the request that defendant perform the physical FSTs was not a problem because the physical FSTs are nontestimonial in nature and, therefore, under *State v. Fish*, 321 Or 48, 58-60, 63, 893 P2d 1023 (1995), do not implicate Article I, section 12. *See also State v. Nielsen*, 147 Or App 294, 306, 936 P2d 374, *rev den*, 326 Or 68 (1997) ("[A] test that reveals an individual's intoxicated state, without requiring the individual to reveal his or her thoughts, beliefs or 'state of mind,' is not testimonial."). Addressing defendant's argument about a refusal to consent to the FSTs being incriminating testimonial evidence, the state does not directly respond to defendant's argument that that makes the request to consent impermissible post-*Miranda* interrogation under *Boyd*. Instead, the state argues that the request to consent comported with Article I, section 12, because defendant had the option of choosing between performing the FSTs, which would produce nontestimonial evidence, or refusing, which would produce testimonial evidence. The state reasons that, because defendant had a choice to produce nontestimonial evidence rather than testimonial evidence, he was not compelled to incriminate himself.

We agree with the state that defendant's Article I, section 11, argument is not preserved and does not qualify

for review as plain error. *Spencer* held that, under Article I, section 11, "an arrested driver has the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." 305 Or at 74-75. That holding has never been extended to require a similar opportunity to consult with counsel before agreeing to perform the FSTs, and it is not obvious that Article I, section 11, requires such a rule. Accordingly, the trial court did not plainly err by declining to suppress the FST-related evidence under the theory that it was obtained in violation of defendant's Article I, section 11, rights. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991) (error is not plain unless it is "obvious, not reasonably in dispute").

Starting with some housekeeping, although *Fish* does inform the analysis in this case, as we will explain, it does not answer the question presented: Whether a request to perform the physical FSTs constitutes impermissible interrogation in violation of *Miranda*. *Fish* did not address any *Miranda* issues. Rather, at issue, among other things, was whether the admission of a refusal to perform the FSTs at trial violated the Article I, section 12, prohibition against compelled self-incrimination. *Fish*, 321 Or at 54-58. The court held that, with respect to the FSTs that produce testimonial evidence, the admission of a refusal would violate Article I, section 12. *Id.* at 63. With respect to the FSTs that did not produce testimonial evidence, however, the admission of a refusal would not violate Article I, section 12. The court reasoned that, in that instance, although a refusal was both testimonial and incriminating, it would not constitute *compelled* testimony when the defendant was given the option to do something that would not produce testimonial evidence. *Id.* at 58-60. And the court was not called upon to address, and did not address, whether asking a defendant to perform the nontestimonial FSTs after the defendant has invoked the *Miranda* rights constitutes impermissible interrogation.

As for whether asking defendant to perform the physical FSTs after he invoked his *Miranda* rights constituted impermissible interrogation, answering that question is not easy and is a reminder that our process for developing the law in our state and country—over time, through

case-by-case decisions—inevitably leads to knots and imperfections. That is, we have some snarls to untangle to resolve the parties' dispute. Ultimately, we conclude that, under current case law, asking defendant to participate in the physical FSTs after he invoked his *Miranda* rights constituted impermissible interrogation that violated his rights under Article I, section 12.

With that said, once a suspect has invoked the *Miranda* rights, police "interrogation" must cease. *State v. Gillispie*, 295 Or App 702, 707-08, 436 P3d 65, *rev den*, 365 Or 194 (2019). "Interrogation," for purposes of Article I, section 12, means police statements or conduct "likely to elicit some type of incriminating response." *State v. Schmidtke*, 290 Or App 880, 885, 417 P3d 563 (2018) (internal quotation marks omitted). More particularly, because Article I, section 12, concerns the right not to be compelled to testify, interrogation means statements or conduct likely to elicit (1) an incriminating response that is (2) testimonial; and (3) "that the prosecution later may seek to introduce at trial." *State v. Scott*, 343 Or 195, 203, 166 P3d 528 (2007); *State v. Hudson*, 253 Or App 327, 345-46, 290 P3d 868 (2012), *rev den*, 353 Or 562 (2013).

How does a request to perform the FSTs fit into this framework?

On the one hand, the FSTs are a search, and a request to perform them is a request that a suspect consent to a search. *State v. Nagel*, 320 Or 24, 31, 36, 880 P2d 451 (1994). And we have held that a request for consent to search does not constitute interrogation. *Hudson*, 253 Or App at 345-46. In *Hudson*, we explained:

> "The likely response, either yes or no, is not incriminating. Rather, as observed by the concurrence in *State v. Vondehn*, 348 Or 462, 489, 236 P3d 691 (2010), the likely and expected answer to a request for permission to search 'either gives permission or it does not; the response is neither inculpatory nor exculpatory (although, to be sure, the results of the search can be).'"

*Id.* at 345. Further, even if the *Vondehn* concurrence on which we relied in *Hudson* may have overlooked the ways in which the response to a request for consent to search—in

particular, a refusal—could at least be argued to be incriminatory or exculpatory, it has long been the case (mostly) that a person's refusal to consent to a search cannot be used as evidence against them at trial to inculpate them. As the Supreme Court recently explained in *State v. Banks*, 364 Or 332, 348-49, 434 P3d 361 (2019), neither Article I, section 9, of the Oregon Constitution nor the Fourth Amendment to the United States Constitution allows for a person's refusal to consent to a search to be entered into evidence against them at trial. This is both because it is dubious to infer guilt from the exercise of the constitutional right to refuse to consent to a search, and also because it would place too high a cost on the exercise of constitutional rights if a person's exercise of their rights could be used against them to incriminate them. *Id*.

On the other hand, and in tension with the view that a response to a request for consent to search is not incriminating, in *Fish*, the Supreme Court held that a refusal to consent to perform the FSTs is both incriminating and testimonial. 321 Or at 56. The court explained that a refusal can communicate a suspect's state of mind in an incriminating way by suggesting that the person believes they will fail the FSTs. *Id*. Further, as we explained recently in *State v. Totland*, "a defendant's refusal to perform nontestimonial field sobriety tests is admissible, and furthermore, * * * the state may use such a refusal to prove that the defendant believed the results would be incriminating." 296 Or App 527, 532, 438 P3d 399, *rev den*, 365 Or 502 (2019) (footnote omitted). We noted, however, that the Supreme Court's decision in *Banks*—that a refusal to consent to search cannot be admitted against a defendant—"may limit the admissibility of a driver's refusal to perform field sobriety tests in some circumstances" but declined to address the issue. *Id.* at 532 n 2.

If the *Hudson/Banks* line of thinking is correct, then requesting that defendant perform the FSTs was not interrogation. It was not likely to elicit an incriminating response because, under that view, "yes" or "no" is not incriminating and, even if a refusal can be incriminating, it would not be evidence "that the prosecution later may seek to introduce at trial." *Scott*, 343 Or at 203.

But, if the *Fish/Totland* line of thinking is correct, then requesting that defendant perform the FSTs was interrogation that was impermissible after defendant invoked the *Miranda* rights. Although the odds will vary, it is reasonably likely that requesting consent to perform the FSTs will lead to a refusal, just as it is reasonably likely that it will lead to consent. Those are the usual—and only responsive—responses to requests for consent. Further, a refusal, under *Fish*, is incriminating and testimonial and, as we explained in *Totland*, admissible against a nonconsenting driver.

Quite a knot.

We untie it, for now, by looking to principles of *stare decisis* and appellate procedure.

First, as an intermediate appellate court, we are bound by the Supreme Court's holding in *Fish* that a refusal to consent to perform the FSTs is an incriminating testimonial response. Therefore, because a request to perform the FSTs is reasonably likely to elicit a refusal, it is reasonably likely to elicit an incriminating response.

Second, as for whether the refusal is something that the prosecution may later seek to introduce at trial, the state has not disputed that point before us and, as explained in *Totland*, a refusal is admissible at trial. 296 Or App at 532. Although *Banks* may have altered that rule, this case does not present the occasion to address the point because, as was the case in *Totland*, neither party has argued it. As noted, the state has not responded directly to defendant's argument that a request that a person perform the FSTs qualifies as interrogation under *Boyd*.

The concurring opinion reaches the same conclusion, one that does not turn on whether a refusal to consent to search ultimately will be, in fact, admissible against a suspect at any ensuing trial. We do not disagree that that is one plausible way to read *Scott*, or that a rule of law that prohibits requesting consent to search after the invocation of the *Miranda* rights regardless of the admissibility of any refusal would be a workable one. That rule of law would depart, however, from our holding in *Hudson* and other cases that a request for consent to search does not constitute

prohibited interrogation for purposes of *Miranda*. *Hudson*, 253 Or App at 345-46; *see State v. Hatfield*, 246 Or App 736, 742-45, 268 P3d 654 (2011), *rev den*, 352 Or 341 (2012) (request for consent to search does not constitute interrogation under *Scott*). It also is in tension with other rules adopted by the Oregon Supreme Court to implement the core Article I, section 12, right against self-incrimination, rules that accomplish that objective, not by barring questioning or compelling disclosure, but by restricting the evidentiary use of a person's responses. *See State v. Pittman*, 367 Or 498, 524-25, 479 P3d 1028 (2021) (consistent with Article I, section 12, a defendant may be compelled to enter a passcode into a phone, a testimonial act, provided, among other things, evidence of the defendant doing so cannot be introduced at trial or used for any reason other than opening the phone); *State v. Soriano*, 68 Or App 642, 665, 684 P2d 1220, *adopted in full*, 298 Or 392, 693 P2d 26 (1984) (Article I, section 12, permits compelling witness to provide incriminating testimony if prosecution grants transactional immunity.). For these reasons, we conclude that the rule we have discerned—that asking for consent to search, including requesting that a suspect perform the physical FSTs, constitutes impermissible interrogation unless the law precludes the use of a person's refusal against the person at trial—is the one demanded by the dictates of current precedent.

Accordingly, we conclude that Shropshire impermissibly interrogated defendant by asking him to perform the FSTs after he invoked his *Miranda* rights. The motion to suppress must be granted, and the trial court erred in concluding otherwise.

*Motion in arrest of judgment and new trial motion.* Defendant's two remaining assignments of error challenge the trial court's denial of his motion in arrest of judgment and his motion for a new trial on the drug offenses. Although we must reverse, we address them because the issue is one that could arise on remand. Both assignments of error are predicated on the same basic theory: that ORS 475.898 rendered him immune from prosecution for those crimes. That statute provides that "[a] person who is in need of medical assistance due to a drug-related overdose is immune from arrest or prosecution for" drug offenses including those

at issue here "if the evidence of the offense was obtained because any person contacted emergency medical services or a law enforcement agency to obtain medical assistance for the person." ORS 475.898(2), (3)(b), (f).

The trial court correctly denied defendant's motion in arrest of judgment. A trial court may grant an order in arrest of judgment for only two reasons, only one of which is potentially relevant here: that the facts alleged in the charging instrument do not state an offense. ORS 136.500; ORS 135.630(1), (4). Here, the face of the information states an offense; defendant's claim that he is entitled to immunity from the offenses charged does not mean that the facts alleged fail to establish a crime. In other words, defendant's claim of immunity, which does not speak to whether the facts alleged in the charging instrument sufficiently state a criminal offense, is not something that, as a procedural matter, can be raised and resolved by way of a motion in arrest of judgment.

The trial court also properly denied the motion for a new trial. The court held a hearing, after which it concluded that defendant had failed to prove that the person who had reported defendant to law enforcement had done so for the purpose of obtaining medical assistance for defendant and, thus, failed to prove that he was entitled to the immunity afforded by ORS 475.898. Having reviewed the record, we see no basis for displacing the court's factual determination that defendant did not prove that the report to law enforcement was for the purpose of obtaining medical assistance for defendant, *see Rowen v. Gonenne*, 274 Or App 803, 814, 362 P3d 694 (2015) (appellate court is bound by trial court's finding that it is not persuaded by evidence), and its consequent legal conclusion that defendant had not demonstrated that he was entitled to the immunity afforded by ORS 475.898.

Reversed and remanded.

**HADLOCK, J. pro tempore,** concurring.

I agree with much of the majority opinion, including its conclusions that (1) defendant's Article I, section 11, argument is unpreserved and does not qualify for plain-error review, (2) the trial court correctly denied defendant's motion

in arrest of judgment, and (3) the trial court properly denied defendant's motion for a new trial. *State v. Shevyakov*, 311 Or App 82, 489 P3d 580 (2021). I also appreciate the majority's candid discussion of tension in the case law regarding when certain kinds of refusals by people suspected of crimes (refusals to perform field sobriety tests (FSTs), to consent to searches, to submit to breath testing, etc.) are admissible in criminal trials. And, at the end of the day, I agree with the majority that the case must be reversed and remanded because Officer Shropshire impermissibly interrogated defendant when, after defendant invoked his *Miranda* rights to counsel and to remain silent, Shropshire asked him to perform physical FSTs.

I write separately because I take a different path than the majority does in determining that reversal is necessary. The question that both I and the majority address is whether a post-*Miranda* request to perform physical FSTs is "interrogation"; a question that turns largely on whether the officer's request that a suspect perform FSTs was reasonably likely to elicit an incriminating response, that is, "any inculpatory or exculpatory response that the prosecution later may seek to introduce at trial." *State v. Scott*, 343 Or 195, 203, 166 P3d 528 (2007). Where the majority and I part ways is on that last point—what constitutes a response "that the prosecution later may seek to introduce at trial."

Before explaining my disagreement with the majority's analysis, I recap the pertinent facts and law. Shropshire arrested defendant for DUII and read him his *Miranda* rights. Defendant invoked those rights, saying both that he did not want to talk to Shropshire anymore and that he wanted an attorney. Nonetheless, after transporting defendant to a police station, Shropshire asked defendant if he wished to perform physical FSTs. Defendant ultimately agreed and evidence of defendant's performance on the FSTs was used to support a search warrant that revealed additional inculpatory evidence. Defendant unsuccessfully moved to suppress, arguing, among other things, that Shropshire had impermissibly interrogated him after he invoked his *Miranda* rights.

On appeal, defendant reiterates that argument, contending that a post-*Miranda* request to perform FSTs is interrogation because it is reasonably likely to elicit an incriminating response. That argument is based on *State v. Boyd*, 360 Or 302, 380 P3d 941 (2016), which reiterated what the Supreme Court had said in *Scott*, *viz.*, that "interrogation extends to the kind of police conduct"—in addition to questioning—"that the police 'should know is reasonably likely to elicit an incriminating response.'" *Scott*, 343 Or at 203 (following analysis from and quoting *Rhode Island v. Innis*, 446 US 291, 301, 100 S Ct 1682, 64 L Ed 2d 297 (1980)) (internal bracketing omitted); *see Boyd*, 360 Or at 316 ("we conclude in this case that *Scott* correctly stated the test" for determining whether interrogation has occurred). Defendant argues that the request to perform physical FSTs was interrogation because one reasonably likely response—a refusal—is incriminating. In response, the state largely relies on cases like *State v. Fish*, 321 Or 48, 893 P2d 1023 (1995), which held—in the different context of analyzing whether certain questioning *compelled* a suspect's self-incrimination—that nontestimonial FSTs are not themselves incriminating. The state does not directly engage with defendant's argument under *Boyd*.

The question that defendant's argument presents is whether, after a suspect has invoked *Miranda* rights, an officer's request to perform physical FSTs constitutes "interrogation" because (as nobody disputes) it is reasonably likely to elicit a refusal from the suspect. As noted above, the answer to that question turns on whether such a refusal is an "incriminating response," that is, an "inculpatory or exculpatory response that the prosecution later may seek to introduce at trial." *Scott*, 343 Or at 203.

In identifying two lines of thinking about what constitutes an interrogation, the majority focuses on whether a suspect's likely responses to an officer's questions would be *admissible* at trial. That is, the majority reads *Scott*'s holding that an incriminating response is one "that the prosecution later may seek to introduce at trial" to mean that an incriminating response is one that the prosecution could properly *succeed* in having introduced into evidence at trial.

That necessary underpinning of the majority's analysis is apparent in its discussions of both lines of thinking it identifies about what it means for a likely response to an officer's questions to be "incriminating." The first line of reasoning identified by the majority relates to officers' requests that individuals consent to searches, as discussed in *State v. Hudson*, 253 Or App 327, 290 P3d 868 (2012), *rev den*, 353 Or 562 (2013), and *State v. Banks*, 364 Or 332, 434 P3d 361 (2019). In *Hudson*, we held that the likely responses to a request to consent to search—"either yes or no"—are not incriminating because "the response is neither inculpatory nor exculpatory." 253 Or App at 345. More recently, in *Banks*, the Supreme Court held that "a person's verbal refusal to consent to a warrantless search" may not be admitted as evidence of guilt because it would impose too high a cost on the person's assertion of constitutional rights. 364 Or at 348 (also "question[ing] the probative value of evidence of a defendant's exercise of a constitutional right to establish the defendant's guilt"). Under that line of cases, the majority states, a request to perform FSTs (which is a request for consent to search) is not interrogation because, even if a refusal could be considered evidence of guilt (despite *Hudson*), the refusal "would not be evidence 'that the prosecution may later seek to introduce at trial.'" 311 Or App at 88. However, because the state might very well *attempt* to have a defendant's refusal to perform FSTs introduced at trial, I understand the majority's conclusion to turn on its reasoning that any such attempt by the state would fail under *Banks* because the court held in that case that refusals to consent to searches are inadmissible.

The contrary line of reasoning that the majority identifies is exemplified by the decisions in *Fish* and *State v. Totland*, 296 Or App 527, 438 P3d 399, *rev den*, 365 Or 502 (2019). As the majority explains, *Fish* held that a person's refusal to perform FSTs is testimonial and may suggest that the person "believed that the performance of the tests would be incriminating." 321 Or at 56. And, although *Fish* precludes admission of a person's refusal to perform *testimonial* FSTs, it has long been understood (at least until *Banks*) that a refusal to perform *nontestimonial* FSTs may at least sometimes be admissible as evidence of the defendant's guilt,

because the refusal has not been compelled. *See Totland*, 296 Or App at 532 & n 2 ("a defendant's refusal to perform non-testimonial field sobriety tests is admissible" evidence of the defendant's guilt; observing in a footnote that *Banks* "may limit the admissibility of a driver's refusal to perform field sobriety tests in some circumstances"); *State v. Adame*, 261 Or App 11, 18-19, 323 P3d 282, *rev den*, 355 Or 703 (2014) (discussing *Fish*). Under that line of reasoning, the majority concludes, a request for consent to perform physical FSTs *is* likely to elicit an incriminating response because one likely response—a refusal to perform the FSTs—is incriminating, testimonial, and it is *admissible*. 311 Or App at 89.

The majority's ultimate resolution of this case depends on following the *Fish*/*Totland* line of cases (rather than the *Banks* line), which it does for admirable jurisprudential reasons. *Id*. As I understand the majority's reasoning, it concludes that the *admissibility* of a defendant's refusal under *Fish*/*Totland* means that the request that was likely to elicit that refusal—the request to perform physical FSTs—was interrogation. And, because that interrogation occurred post-*Miranda*, it was unlawful, and evidence discovered as a result of that *Miranda* violation must be suppressed.

My understanding of the meaning of "interrogation" and "incriminating response" as set out in *Scott* differs from the majority's, and it leads me down a different path. As I endeavor to explain below, I do not believe that whether police questioning of a suspect constituted "interrogation" should turn on the ultimate resolution—under the law as it exists months or years after the questioning took place—of whether the suspect's reasonably likely response to that questioning is *admissible* at trial as evidence of the suspect's guilt. Rather, I conclude that interrogation of a suspect occurs when police officers' questioning is reasonably likely to elicit a response that is "incriminating" because it is something that, at that point in time, could reasonably appear useful to the state in a criminal prosecution (*perhaps* as direct evidence of the suspect's guilt, but also possibly as impeachment evidence or even as information helpful to further investigation). I base that conclusion on the holdings

in *Scott* and *Innis*, on discussions from other Article I, section 12, cases, and on practical considerations.

In *Scott*, the Supreme Court applied the definition of "interrogation" that the United States Supreme Court had set out in *Innis*. I find it helpful to consider the entirety of what *Innis* said on that point:

> "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response[5] from the suspect.

> _____

> "[5] By 'incriminating response' we refer to any response—whether inculpatory or exculpatory—that the *prosecution* may seek to introduce at trial. As the Court observed in *Miranda*:

>> "'No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement.'"

446 US at 301 & n 5 (emphasis in original). *See Scott*, 343 Or at 202-03 (explaining reliance on *Innis*).

The *Innis* footnote emphasizes the breadth of the privilege against self-incrimination, and it flags the possibility that a statement may be considered "incriminating"—at

least in this context—even if it is eventually used for purposes other than direct evidence of the defendant's guilt, such as for impeachment. Moreover, although *Scott* quotes only the first sentence of footnote 5 from *Innis*, *see* 343 Or at 202, no part of its analysis (or the analysis in *Boyd*) suggests that the court meant to embrace only part of the *Innis* view of what constitutes an "incriminating response." To the contrary, the *Scott* court applied what it called "the *Innis* definition" of interrogation, which necessarily encompasses the entirety of footnote 5 in that opinion. *Id*. at 203.

Importantly, nothing in the *Innis* footnote—or in *Scott*—requires that the suspect's response be *admissible* as direct evidence of guilt to qualify as "incriminating." Rather, those opinions are phrased in terms of whether the reasonably likely response is something that the prosecution might *seek* to introduce, either as direct evidence of guilt or, as *Innis* states explicitly, for impeachment purposes. *Innis*, 446 US at 301 n 5; *Scott*, 343 Or at 203. I view those cases as placing the analytical focus on the use to which the state *anticipates* the suspect's response may be put, and not on whether the response ultimately is deemed admissible at trial.

I find additional support for that view in cases that explain how an officer's purpose in questioning a suspect can influence the analysis of whether the questions constitute interrogation. "Under Article I, section 12, an interrogation does not include questions normally attendant to arrest and custody." *State v. Schmidtke*, 290 Or App 880, 885, 417 P3d 563 (2018) (quotation marks and citation omitted).[1] Such a question ordinarily will not constitute interrogation if it "serve[s] a noncriminal, noninvestigatory purpose." *State v. Cunningham*, 179 Or App 498, 505, 40 P3d 535, *rev den*, 334 Or 327 (2002). However, the exception for

---

[1] The state has not argued in this case that a request to perform physical FSTs is a question normally attendant to arrest and custody for DUII. The state did make that argument in its merits brief in *State v. Koch*, 363 Or 677, 427 P3d 1088 (2018), a Supreme Court case that presented some of the same questions at issue here, including whether an officer violates a suspect's rights under Article I, section 12, if the officer asks the suspect to perform physical FSTs after the suspect has been read *Miranda* warnings and has invoked the associated rights. The Supreme Court dismissed review in *Koch* as improvidently allowed following oral argument. 365 Or 658 (2019).

"questions normally attendant to arrest and custody" "does not extend to an officer's questions that are 'designed' to elicit incriminating information." *Schmidtke*, 290 Or App at 885. Thus, interrogation occurs when "police ask an otherwise permissible question with the intent to elicit incriminating information." *Cunningham*, 179 Or App at 504. Moreover, regardless of an officer's subjective intent, some questions, "by [their] very nature, evidence[] an investigatory purpose" and therefore are deemed "designed" to elicit incriminating information. *State v. Lanier*, 290 Or App 8, 15, 413 P3d 1020 (2018).

The focus in those cases is not on whether the officer's questioning is reasonably likely to elicit a response that would be *admissible* in a criminal trial. Indeed, I am not aware of any case that analyzes whether a likely response is incriminating by considering its ultimate admissibility.[2] Rather, the focus in cases like *Schmidtke*, *Lanier*, and *Cunningham* is on whether the questioning has an investigatory purpose. Reading those opinions together with *Scott* and *Innis*, I understand the point to be that interrogation occurs when an officer's questioning of a suspect is reasonably likely to elicit a response that serves an investigatory or prosecutorial purpose—that is, a response that is "incriminating" because the state may *seek* to use it in conjunction with further investigation or prosecution of the suspect. Even if, under *Scott*, that understanding must be narrowed to responses that the state may seek to use *at trial*, see 343 Or at 203 ("'incriminating response' *** means any inculpatory or exculpatory response that the prosecution later may seek to introduce at trial"), my focus would remain on

---

[2] In *Fish*, the Supreme Court held that, "to receive protection under the self-incrimination clause of Article I, section 12, a person's statement or conduct must (1) be 'testimonial' evidence, (2) be 'compelled,' and (3) be evidence that could be used against the person in a criminal prosecution." 321 Or at 53. Even if that third prong of the *Fish* test means that the evidence must be admissible in a criminal trial—a point on which I express no opinion—that does not affect my analysis. *Fish* was not a *Miranda* case, and the court did not set out to analyze what constitutes "interrogation" once *Miranda* rights have been invoked. Rather *Fish* considered the different question of when police questioning may be said to "compel" a defendant's self-incrimination. *See also State v. Pittman*, 367 Or 498, 508, 479 P3d 1028 (2021) (quoting *Fish* in another case in which compelled self-incrimination was the issue); *Adame*, 261 Or App at 15 (similar). Compelled self-incrimination is not at issue in the same way here.

the word "seek." That is, whether questioning of a suspect constitutes interrogation depends on whether the questioning is reasonably likely to elicit a response that the state might reasonably *hope* to be able to introduce in the suspect's criminal trial—that is, a response that the state would view as helping demonstrate the suspect's guilt (either directly or by impeaching other evidence). Whether the response would be deemed admissible at a later trial, in the context of the parties' arguments and other proffered evidence, should not be relevant to that determination.

Finally, practical considerations and the underlying purposes of the *Miranda* warnings also lead me to reject the idea that interrogation has occurred only if the suspect's reasonably likely response will be admissible at trial. *Miranda* warnings "serve to help ensure that any statement made by a person in custody is the product of the person's free choice and not the result of the inherently coercive nature of police custody." *State v. Sanelle*, 287 Or App 611, 623, 404 P3d 992 (2017), *rev den*, 362 Or 482 (2018). When a suspect invokes *Miranda* rights and an officer nonetheless continues to ask substantive questions, the suspect may feel that the invocation of rights was "meaningless." *See State v. Ward*, 367 Or 188, 205-06, 475 P3d 420 (2020) (describing such a harm resulting from officers "ignoring defendant's invocation of his right to remain silent, then holding him in jail for four days without the opportunity to speak with counsel"). From the suspect's perspective, being subjected to continued investigatory questioning after having declared, as here, "I don't want to talk to you guys anymore," will seem like interrogation, regardless of whether any reasonably likely response ultimately would be deemed admissible at trial.

I believe that the majority's approach also will be unworkable when viewed from the perspective of law enforcement officers who are investigating suspected criminal activity. Officers need to understand—in the moment—what questions they may ask suspects who have invoked their *Miranda* rights and what kinds of questions are impermissible. That is feasible if the term "incriminating response" means a response that would be useful to the state in a criminal prosecution. Officers can be expected to appreciate

whether their questions of a suspect are reasonably likely to elicit a response that would be helpful to an investigation or prosecution of that suspect. But it is not reasonable to expect an officer to understand what questioning is permissible or impermissible if the officer has to determine not only what types of responses are reasonably likely, but also whether each of those responses would be admissible at trial under the rules of evidence (and, therefore, "incriminating" under the majority's approach).

Applying my view of what it means for a suspect's likely response to questioning to be "incriminating," I conclude that Shropshire interrogated defendant when he asked him whether he would perform physical FSTs. One reasonably likely response to that question was a refusal. The state has often sought—sometimes successfully—to introduce defendants' refusals to perform FSTs (or to submit to other police investigation) as evidence of guilt. *See, e.g.*, *State v. Smith*, 302 Or App 787, 789 n 2, 791-92, 462 P3d 310, *rev den*, 366 Or 731 (2020) (rejecting unpreserved argument that trial court erred when it admitted evidence of the defendant's refusal to take a breath test; noting that jury was instructed that it could consider the refusal in determining whether the defendant was under the influence); *State v. Stills*, 299 Or App 194, 195, 447 P3d 80, *rev den*, 365 Or 769 (2019) (accepting state's concession that, "on the unique facts of this case," the defendant's refusal to perform FSTs was not admissible evidence of his guilt); *Totland*, 296 Or App at 532 ("a defendant's refusal to perform nontestimonial field sobriety tests is admissible, and *** the state may use such a refusal to prove that the defendant believed the results would be incriminating"). *But cf. Banks*, 364 Or at 348 ("a person's verbal refusal to consent to a warrantless search" may not be admitted as evidence of guilt because it would impose too high a cost on the person's assertion of constitutional rights; also questioning the probative value of such evidence). Accordingly, Shropshire's request to perform FSTs was reasonably likely to produce an incriminating response, that is, a refusal that the state then could plausibly *seek* to use at trial against defendant, regardless of whether a court would have ultimately ruled any such refusal to be admissible.

In sum, I agree with the majority's conclusion that Shropshire impermissibly interrogated defendant when, after defendant invoked his *Miranda* rights, Shropshire asked him to perform physical FSTs. For the reasons set out above, however, I disagree with the majority's analysis and would reach the same conclusion for different reasons.

I respectfully concur.