Submitted December 12, 2008, affirmed July 1, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JERI LYNN MOELLER,
*Defendant-Appellant.*

Marion County Circuit Court
06C40313; A135295

211 P3d 364

Garrett A. Richardson filed the brief for appellant. With him on the brief was Multnomah Defenders, Inc.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

LANDAU, P. J.

## LANDAU, P. J.

■     Defendant appeals a judgment of conviction for conspiracy to possess cocaine. ORS 161.450; ORS 475.884. She assigns error to the trial court's refusal to suppress a statement she made during her booking at the county jail. She contends that she made the statement in response to what amounted to custodial interrogation without first having been given *Miranda* warnings. The state contends that, as the court found, defendant made the statement in response to a routine booking question, which need not be preceded by *Miranda* warnings. Defendant insists that there is no actual evidence that she made the statement in response to such a routine booking question. We conclude that there is evidence to support the court's finding and affirm.

This much is undisputed: During a traffic stop, defendant told the patrol officer that she knew there was a warrant out for her arrest on the charge of conspiracy to possess cocaine. The patrol officer summoned Officer Zohner to the scene to arrest defendant. When Zohner arrived, he handcuffed defendant and conducted a patdown search for weapons. He then transported her to the county jail. Neither officer questioned defendant. Nor did they provide *Miranda* warnings.

When Zohner and defendant arrived at the jail, two intake deputies inventoried defendant's property and asked her questions—precisely what questions is the principal issue in this appeal—to complete their booking paperwork. Zohner stood nearby. During the booking, defendant admitted that she had recently used cocaine.

Defendant moved to suppress that statement, arguing that it was the product of custodial interrogation without the benefit of *Miranda* warnings. At the suppression hearing, one of the intake deputies, Deputy Ramsey, testified that they typically ask detainees about medical conditions during the booking process. Referring to the standard booking form that he completed during defendant's booking, Ramsey stated that, "[o]n the form in the little box it just says illnesses, injury, and then a space for us to write in. Most of the

deputies would just word it that way, do you have any illnesses or injuries." Ramsey admitted, however, that they follow no intake script and that he does not recall how he phrased the question in this case.

Zohner testified that he could not remember the specifics of defendant's booking either. He did, however, describe the intake deputies' questioning of defendant in general terms:

"[Prosecutor:]   * * * And in this report, it says that the defendant admitted something. Can you tell us the context of how you recall that coming up[?]

"[Zohner:]   I believe it was when they were talking about medical problems or any medical issues during that conversation with the jail deputies that the defendant said that she admitted to—if I may refer to my report—she admitted to using cocaine and that she had recently relapsed after being sober for about 20 years.

"[Prosecutor:]   What I'd like to know is, can you, understanding you don't necessarily remember the specifics, can you state with certainty—and if you can't, that's fine—but can you state with certainty that you didn't ask her any questions about cocaine use?

"[Zohner:]   I don't—I did not ask her any questions about a cocaine use.

"[Prosecutor:]   I guess what I'm trying to figure out is, are you certain about that fact?

"[Zohner:]   I'm certain it was the jail deputies that were the ones asking the questions with regards to the medical problems, so I think it was just her conversing with them and not me."

The trial court denied the motion to suppress. The court found that the question that prompted defendant's incriminating statement related to whether defendant had a "medical condition." The court also found that the question "was not designed to get incriminatory information, it was designed in order to help facilitate a good transitional process that they ought to be aware of anything in particular while the person remained in their custody." Accordingly, the court

reasoned, defendant was not subjected to custodial interrogation, and, thus, her statement need not be suppressed. After the court denied her suppression motion, defendant pleaded guilty, reserving the right to appeal the denial of the motion.

On appeal, defendant maintains that her incriminating statement was the product of custodial interrogation. The state does not dispute that, when defendant made the statement, she was in custody and had not been advised of her *Miranda* rights. In the state's view, those facts are of no consequence because defendant was not subjected to "interrogation." Instead, the state asserts, defendant's statement was a response to a question whether she had a medical condition, which falls squarely within the exception to the requirement to provide *Miranda* warnings for questioning that is normally attendant to arrest and booking.

Defendant acknowledges that the trial court found that she made her incriminating statement in response to a question whether she had a medical condition. Her argument is that that finding is not supported by evidence in the record "because the witnesses could not remember the specifics of the incident." Defendant asserts that, because the state has the burden of demonstrating that police questioning was permissible under *Miranda*, it failed to make the required showing "when there is no evidence of what was actually said in this particular case."

The state counters that Zohner's testimony that defendant made the statement while she and the intake deputies "were talking about medical problems or any medical issues" is ample evidence to support the trial court's finding to that effect. Such a question is permissible without giving *Miranda* warnings, the state asserts, because it serves an administrative purpose and is not likely to elicit an incriminating response. We agree.

An individual's incriminating statements must be suppressed if they stem from "custodial interrogation" without the individual first being advised of procedural safeguards to secure the right against self-incrimination provided by the Fifth Amendment to the United States Constitution (so-called *Miranda* warnings). *Miranda v.*

*Arizona*, 384 US 436, 444, 86 S Ct 1602, 16 L Ed 2d 694 (1966); *State v. Shaff*, 343 Or 639, 641 n 1, 175 P3d 454 (2007) (describing Article I, section 12, of the Oregon Constitution as "an independent source" for the requirement of *Miranda*-like warnings).

In this case, as we have noted, it is undisputed that defendant was in custody and had not been advised of her *Miranda* rights when she made the statement she later sought to suppress. Accordingly, our decision turns on whether defendant was subjected to "interrogation."

"[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 US 291, 301, 100 S Ct 1682, 64 L Ed 2d 297 (1980) (footnote omitted); *see also State v. Cunningham*, 179 Or App 498, 501, 40 P3d 535, *rev den*, 334 Or 327 (2002) (noting that Oregon has adopted that definition of "interrogation" for purposes of Article I, section 12). Questions normally attendant to arrest and custody, even if reasonably likely to elicit incriminating information, are not subject to the requirement to give *Miranda* warnings so long as they are not intended or designed to elicit such information. *Cunningham*, 179 Or App at 503-04, 504 n 5 (discussing the plurality decision in *Pennsylvania v. Muniz*, 496 US 582, 602 n 14, 110 S Ct 2638, 110 L Ed 2d 528 (1990), and adopting its reasoning for the purposes of Article I, section 12); *see Cunningham*, 179 Or App at 500, 505 (holding that a question whether the arrestee had anything sharp or that would otherwise hurt the arresting officer "served a noncriminal, noninvestigatory purpose" and, thus, fell within the exception to *Miranda* for questioning normally attendant to arrest and custody).

Among the questions normally attendant to arrest and custody—not requiring *Miranda* warnings—are "routine booking questions." Those are "questions to secure the biographical data necessary to complete booking or pretrial services" that are "requested for record-keeping purposes

only" and thus are "reasonably related to the police's administrative concerns." *Muniz*, 496 US at 601-02 (plurality opinion) (internal quotation marks omitted). This court has held that questions soliciting "routine identifying information necessary for booking" are generally not interrogation. *State v. Rodriguez*, 37 Or App 355, 359, 587 P2d 487 (1978), *rev den*, 285 Or 319 (1979); *accord State v. Hlady*, 43 Or App 921, 926, 607 P2d 733 (1979) (questions as to name, age, birthdate, and Social Security number not interrogation); *State v. Cobb*, 22 Or App 510, 512, 516, 539 P2d 1140 (1975) (question about ownership of a vehicle involved in a high-speed police chase was "routine and relatively administrative [in] nature" and not interrogation); *State v. Whitlow*, 13 Or App 607, 613, 510 P2d 1354 (1973) (asking an arrestee to provide his name served a "standard administrative purpose" and did not constitute interrogation).

In reviewing a denial of a motion to suppress, we are bound by the trial court's findings of historical fact so long as they are supported by constitutionally sufficient evidence in the record. *State v. Brummer*, 196 Or App 439, 444, 102 P3d 695 (2004), *rev den*, 338 Or 363 (2005). As we have noted, in this case, the trial court found that a question about whether defendant had a medical condition prompted defendant's incriminating statement. We agree with the state that Zohner's testimony—that defendant made her statement "when they were talking about medical problems or any medical issues"—is sufficient evidence to support that finding. The fact that Zohner could not recall the precise words that the intake deputies employed is of no moment. Defendant cites no authority for the assertion that such specific recollection is required, and we are aware of none. The trial court further found that that question was not designed to elicit incriminating information. That finding is also supported by the evidence, given Ramsey's testimony that such a question is routinely asked of every detainee during booking. Accordingly, we are bound by those findings.

Given the findings, we conclude that defendant was not subjected to interrogation. A question about whether a detainee has a medical condition serves a standard administrative purpose, that is, to provide the police with the information necessary to attend to the detainee's medical needs

while in police custody. Such a question is similar to the questions soliciting "routine identifying information necessary for booking" that we have previously held are not subject to the requirement to give *Miranda* warnings.

The trial court did not err in denying defendant's motion to suppress.

Affirmed.