Submitted November 24, 2009, affirmed August 11, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TROY LEE HIGLEY,
*Defendant-Appellant.*

Columbia County Circuit Court
061079; A138449

237 P3d 875

Peter Gartlan, Chief Defender, and Ryan T. O'Connor, Deputy Public Defender, Appellate Division, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Janet A. Metcalf, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

A Columbia County deputy sheriff stopped defendant for driving a pickup truck "so as to cause any greater noise or sound than is reasonably necessary for the proper operation of the vehicle." ORS 815.025(1). During the stop, the deputy developed probable cause to believe that defendant was guilty of driving under the influence of intoxicants (DUII) and driving while his license was revoked. At trial, defendant moved to suppress the evidence discovered during and after the stop, arguing that the stop was unlawful because the statute purportedly authorizing it, ORS 815.025, was unconstitutionally vague. He also argued that, by asking him to take a breath test after he had invoked his right to counsel, the officer violated Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution. The trial court denied defendant's motion, and he was convicted of DUII after entering a conditional guilty plea and reserving his right to appeal. We affirm.

The relevant facts are few and undisputed. Columbia County Deputy Ritchie stopped his patrol car at a four-way stop sign shortly after midnight. Defendant drove by the deputy and proceeded through the intersection. The deputy believed that defendant's truck made "excessive noise," as if the truck lacked a muffler or the muffler was disconnected, and decided to pull defendant over for the excessive noise violation.

After the deputy activated his overhead lights, defendant drove a few hundred feet before pulling over. Defendant briefly attempted to walk away from his truck, but the deputy succeeded in detaining him. When he did so, he noticed that defendant's eyes were watery and bloodshot, his speech was slurred, and he smelled of alcohol. The deputy asked for identification; defendant responded that he did not have a driver's license but that he had an identification card in his wallet. A records check disclosed that defendant was on probation, with an alcohol restriction, and that his license was "felony revoked." The deputy cited defendant for DUII and driving while revoked.

After defendant was cited, *Mirandized*, and taken to the local jail, the deputy asked defendant to complete a field sobriety test. Defendant asked to consult an attorney first. The deputy noted this as a refusal and then asked defendant to submit to a breath test. Again, defendant requested to speak to an attorney. The deputy gave defendant 20 minutes to do so. When defendant could not reach one, he told the deputy to record a refusal. The deputy then contacted defendant's probation officer, who also asked defendant to take a breath test; defendant again refused to do so without a lawyer. As noted above, defendant at trial sought suppression of "all observations of the accused, statements, admissions and/or confessions * * * and the fruits thereof" on the grounds that the stop resulted from enforcement of an unconstitutional statute and that the refusals to take field sobriety and breath tests resulted from violation of his right to counsel. Defendant renews those arguments on appeal.

■ Defendant's "right to counsel" argument under the United States and Oregon constitutions depends on the proposition that asking a person to take field sobriety or breath tests is "interrogation." That argument has been unequivocally rejected, *South Dakota v. Neville*, 459 US 553, 564 n 15, 103 S Ct 916, 74 L Ed 2d 748 (1983); *State v. Gardner*, 236 Or App 150, 155, 236 P3d 742 (2010); *State v. Cunningham*, 179 Or App 498, 502, 40 P3d 535, *rev den*, 334 Or 327 (2002), and we reject it again with no further discussion.

■ Defendant's "void for vagueness" argument focuses on the phrase "greater noise * * * than is reasonably necessary for the proper operation of the vehicle." ORS 815.025(1). Under the Oregon Constitution,

> "[t]he terms of a criminal statute must be sufficiently explicit to inform those who are subject to it of what conduct on their part will render them liable to its penalties. In addition to its function of giving fair notice of the forbidden conduct, criminal statute must not be so vague as to permit a judge or jury to exercise uncontrolled discretion in punishing defendants, because this offends the principle against *ex post facto* laws embodied in Article I, section 21, of the Oregon Constitution. The equal privileges and immunities clause is also implicated when vague laws give unbridled discretion to judges and jurors to decide what is

prohibited in a given case, for this results in the unequal application of criminal laws. A criminal statute need not define an offense with such precision that a person in every case can determine in advance that a specific conduct will be within the statute's reach. However, a reasonable degree of certainty is required by Article I, sections 20 and 21."

*State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985) (citations and footnote omitted). Under the Due Process Clause of the United States Constitution, a statute is unconstitutionally vague "if it either contains no identifiable standard, *Kolender v. Lawson*, 461 US 352, 358, 103 S Ct 1855, 75 L Ed 2d 903 (1983), or employs a standard that relies on the shifting and subjective judgments of the persons who are charged with enforcing it, *City of Chicago v. Morales*, 527 US 41, 62, 119 S Ct 1849, 144 L Ed 2d 67 (1999)." *State v. Illig-Renn*, 341 Or 228, 240, 142 P3d 62 (2006).

The state contends that this case cannot meaningfully be distinguished from *State v. Marker*, 21 Or App 671, 536 P2d 1273 (1975). In that case, this court confronted a vagueness challenge to the phrase "unreasonable noise" in ORS 166.025(1)(b), a "disorderly conduct" statute. After surveying case law from other jurisdictions and noting our obligation to uphold statutes if possible, *Marker*, 21 Or App at 673, we concluded

"that the action element of ORS 166.025(1)(b) [including the term 'unreasonable noise'] is described with words of common usage with a well defined, well understood and generally accepted meaning, and, as written, enables [persons] of common intelligence to understand what conduct is prohibited. We are satisfied that the language of ORS 166.025(1)(b) is not vague, and that it contains the requisite specificity for a penal statute."

*Id.* at 677. Defendant argues that *Marker* is distinguishable because the disorderly conduct statute in that case contained a *mens rea* requirement ("intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof"). *Marker*, however, separately analyzed each phrase of the statute, and the analysis of "reasonable noise" was not conditioned on the existence of a *mens rea* element—nor can we discern how the existence or nonexistence of such an element is relevant to a vagueness challenge.

■   The disorderly conduct statute, however, is not the excessive motor vehicle noise statute, nor is the phrasing in the former ("unreasonable noise") identical to the phrasing in the latter ("greater noise * * * than is reasonably necessary"). Technically, therefore, the analysis in *Marker* does not necessarily carry over to the analysis in this case. However, we need not decide whether it does or not. That is so because, even if ORS 815.025(1) is unconstitutionally vague, and even if a stop based on an unconstitutionally vague statute entitles a defendant to a suppression remedy—an issue that we do not address—the court's ruling was correct on a different basis. The court was "right for the wrong reason."

■   Under *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), we may affirm the trial court when

> "(1) * * * the facts of record [are] sufficient to support the alternative basis for affirmance; (2) * * * the trial court's ruling [is] consistent with the view of the evidence under the alternative basis for affirmance; and (3) * * * the record materially [is] the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below."

Further, a stop is lawful even if the officer who executes it does so under the mistaken belief that the defendant has violated one law if the facts that the officer perceives amount to a violation of a different law. "[P]robable cause may be based on a mistake as to *which* law the defendant violated. * * * [T]he facts that the officer perceives to exist must establish the elements of *an* offense, even if not the offense that the officer believed the defendant committed." *State v. Boatright*, 222 Or App 406, 410, 193 P3d 78, *rev den*, 345 Or 503 (2008) (emphasis in original). ORS 815.250(1) creates the offense of "Operation without proper exhaust system." An exhaust system is proper only if, among other things, it is "in good working order." ORS 815.250(2)(a). In this case, the following colloquy occurred:

> "Q [by prosecutor]:   Okay. Could you describe how you came about seeing the defendant at that time?
>
> "A [by Deputy Ritchie]:   I was on patrol at the intersection of Holbrook Road and Walker Road. That's a four-way

intersection. While at the stop sign the defendant came up behind me in a white Ford pickup. I allowed the pickup to go by and as he did I noticed excessive noise coming from the motor. *Sounded like an engine with no muffler or one disconnected. Decided to stop the vehicle* and proceeded up Walker Road.

"Q:  Okay. Are you familiar with the operation of a muffler such as [*sic*] a Ford pickup?

"A:  I'm not a mechanic but I know they have to have one.

"Q:  Okay. And are you familiar with the sound that a pickup in general makes to operate properly?

"A:  Yes. I own one.

"Q:  Okay. And what was it about the pickup that night that caught your attention noise-wise?

"A:  It wasn't—it wasn't the normal reasonableness [*sic*] noise you would hear from a Ford pickup. *Sounded like either the muffler or muffler system was disconnected from the motor*, extremely loud and ratchety, not smooth and muffled sounding."

(Emphasis added.) Clearly, this testimony demonstrates that the deputy subjectively believed that defendant was driving a vehicle in violation of ORS 815.250(1). The evidence also demonstrates that his belief was objectively reasonable. The only testimony about the sound level of the truck from somebody other than the deputy came from defendant's father, the vehicle's owner. And although he testified that, to the best of his knowledge there was nothing wrong with the exhaust system, he also testified that the vehicle was 20 years old, that he used it as a "[w]ork truck basically," that it "makes a little bit more" noise when started up than a new car would because "they just do after 20 years or so." He acknowledged that the truck made "a little throaty grumbling noise with the exhaust." That testimony may or may not have been sufficient to convict defendant of violating ORS 815.250(1), but it certainly is enough to provide an objective basis for the deputy's belief that the exhaust was not "in good working order." Further, we cannot discern how the record would have developed differently if the motion to suppress had been based on the argument that the deputy lacked probable cause to

believe that defendant violated ORS 815.250(1). Thus, regardless of whether ORS 815.025 is unconstitutionally vague, the stop was lawful and the court correctly denied defendant's motion to suppress.

Affirmed.