616 April 22, 2026 No. 314

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSE ANTONIO DELGADO-RODRIGUEZ,
*Defendant-Appellant.*

Washington County Circuit Court
22CR02884; A182175

Erik M. Buchér, Judge.

Argued and submitted July 30, 2025.

Joel C. Duran, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

POWERS, J.

Conviction on Count 1 reversed and remanded; otherwise affirmed.

**POWERS, J.**

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010(4), and unlawful possession of a firearm, ORS 166.250. In a single assignment of error, defendant challenges the court's denial of his motion to suppress evidence discovered during his arrest, raising two main arguments: first, that the officers did not have probable cause to arrest him for possessing a concealed firearm because the firearm was not concealed; and second, that an officer unlawfully interrogated him after he had invoked his right to silence and his right to an attorney. We conclude that the officers had probable cause to arrest defendant for possession of a concealed firearm and therefore reject his first argument. We further conclude, however, that defendant was unlawfully interrogated after he had invoked his Article I, section 12, rights. In so holding, we overrule the portion of *State v. Higley*, 236 Or App 570, 237 P3d 875 (2010), that concluded that a request to submit to field sobriety tests (FSTs) was not "interrogation" for purposes of a defendant's right to counsel.[1] The trial court erred in concluding that the request to perform FSTs did not constitute interrogation in these circumstances. We, therefore, reverse the conviction for DUII, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

We review a trial court's ruling on a motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). In so doing, we are bound by the court's factual findings if there is constitutionally adequate evidence to support them. *Id*. If the court did not make express findings of fact on all pertinent issues, we "presume that the facts were decided in a manner consistent with the court's ultimate conclusion." *Id*. We set out the background facts adduced at the suppression hearing, which were later incorporated int the record for the stipulated facts trial before the court, with that standard of review in mind.

---

[1] Because this opinion overrules our existing precedent, the panel specifically advised all members of the court of the effect of its decision, but neither the Chief Judge nor a majority of the regularly elected or appointed judges referred the cause, under ORS 2.570(5), to be considered en banc.

Around 4:45 a.m. on a January morning, Sergeant Yazzolino and Sergeant McPherson of the Washington County Sheriff's Office noticed defendant's truck on the shoulder of the highway and saw the headlights flash. Thinking the driver might need assistance, they pulled over behind the truck. Defendant got out of the truck with a gas can and told McPherson that the truck was out of gas and that he had contacted his cousin. While McPherson spoke to defendant, Yazzolino, who was acting as the cover officer, looked through the passenger window of the truck for other people. Using a flashlight to see inside, Yazzolino spotted a handgun that was mostly tucked into the space where the bench seat and the backrest meet. After confirming that defendant did not have a concealed handgun license, the officers arrested defendant for unlawful possession of a firearm, placed him in handcuffs, and read him his *Miranda* rights. Defendant invoked his right to counsel and refused to answer any questions.

During the arrest process, the officers also developed suspicion that defendant was intoxicated and, therefore, had committed DUII. The officers' suspicion was based on the presence of empty beer bottles in the truck, an odor of alcohol on defendant's breath, and other signs of intoxication like poor balance and bloodshot eyes.

McPherson transported defendant to the police station and asked defendant if he would perform standardized FSTs. Defendant told McPherson that he wanted to speak to an attorney. McPherson read defendant a *Rohrs* admonishment,[2] and then gave defendant the opportunity to call an attorney. After several minutes in a room alone, defendant emerged and agreed to perform the purely physical FSTs.[3] McPherson detected multiple signs of intoxication while conducting the FSTs. McPherson then asked defendant if he would provide a breath sample, and defendant

---

[2] The admonishment is based on *State v. Rohrs*, 157 Or App 494, 970 P2d 262 (1998), *aff'd by an equally divided court*, 333 Or 397 (2002), and is a warning that a refusal to submit to physical tests may be used against the individual in court. *State v. Koch*, 267 Or App 322, 324, 341 P3d 112 (2014).

[3] McPherson testified that "standardized" field sobriety tests include all tests, whereas non-standard tests are the ones administered following the *Rohrs* admonishment, and ask the suspect for physical cooperation only, and no verbal comments.

refused, explaining that he felt he had "passed" the FSTs. McPherson subsequently obtained a warrant to seize defendant's blood and included his observations from administering the FSTs in the warrant affidavit. The blood draw, which was performed nearly six hours after defendant had been arrested, showed a blood alcohol content of 0.081 percent.

Before trial, defendant moved to suppress all evidence obtained following his arrest for unlawful possession of a firearm, arguing that the officers had not had probable cause to arrest him because the firearm was not concealed. The court denied the motion, finding that the firearm was concealed. Defendant also sought to suppress the results of the FSTs, and all derivative evidence, arguing that McPherson unlawfully interrogated him after he had invoked his *Miranda* rights. The court denied the motion, ruling that, because the request to perform FSTs was a part of the standard DUI process, it was not interrogation because the request was normally attendant to arrest and custody. Defendant was found guilty on both charges based on a stipulated facts trial before the court, which incorporated the evidence as presented during the suppression hearing. This appeal follows.

## PROBABLE CAUSE FOR ARREST

We begin with defendant's first argument, that the officers did not have probable cause to arrest him for unlawful possession of a firearm, and therefore all evidence discovered in the course of his arrest should have been suppressed. A warrantless arrest is permissible under Article I, section 9, of the Oregon Constitution if the arresting officer has probable cause to believe that the person has committed a crime. *State v. Sanchez-Anderson*, 300 Or App 767, 772-73, 455 P3d 531 (2019). Probable cause exists if the officer subjectively believes it is more likely than not that the individual committed a crime, and that belief is objectively reasonable. *Id.* at 773. We review the trial court's ruling on a motion to suppress for errors of law, and we are bound by the trial court's findings of fact if they are supported by constitutionally sufficient evidence. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017).

A person commits the crime of unlawful possession of a firearm if the person knowingly possesses a handgun that is concealed and readily accessible to the person within any vehicle. ORS 166.250(1)(b). Defendant does not dispute that he possessed a handgun and that it was readily accessible to him within the vehicle. He disputes only whether there was probable cause to believe that the handgun was concealed.

The Supreme Court has explained that

"in the context of ORS 166.250(1)(b), the legislature intended that a handgun is 'concealed' in a vehicle if the placement of the gun would fail to give reasonable notice of the gun's presence, through ordinary observation, to a person actually coming into contact with the occupants of the vehicle and communicating in the manner typical of such a contact—such as through an open window."

*State v. Harrison*, 365 Or 584, 589, 450 P3d 499 (2019). That inquiry is a question of fact. *Id.* at 594 (explaining that "[s]o understood, whether a handgun is 'concealed' in a vehicle will ultimately be a question for the finder of fact").

In this case, the trial court found—as a factual matter—that the handgun in the truck was concealed. Relying primarily on the photograph of the firearm as it appeared to the officers, the court noted that it was 90 to 95 percent stuffed into the seat. The court reasoned that the handgun was visible only if someone was specifically looking at it from a particular vantage point, and that a regular person would not be able to see it if a driver was in the driver's seat, and probably would not be able to see it from the passenger side if there was a passenger in the seat. The court's factual finding that the handgun was concealed is supported by the evidence in the record, particularly a photograph of the handgun, which was admitted into evidence as an exhibit and which we reproduce here:



In the photo, only the very top of the firearm is visible and the object is not necessarily readily identifiable.

Defendant asserts that the placement of the handgun with the handle tucked into the cushion of the bench seat gave reasonable notice of the gun's presence, and points to the fact that it was immediately identified as a firearm by the officer standing just outside the vehicle. Defendant's argument urges an alternative factual conclusion than that reached by the trial court; however, under our standard of review, we are bound by the trial court's findings of fact that are supported by constitutionally sufficient evidence. *Maciel-Figueroa*, 361 Or at 165-66. Accordingly, we reject defendant's argument. Because the officers had probable cause to arrest defendant for unlawful possession of a firearm, the trial court did not err in denying defendant's motion to suppress all evidence derived from his arrest.

## REQUEST TO PERFORM FSTs

In his second argument, defendant asserts that he was unlawfully interrogated after he had invoked his right to silence and his right to an attorney under Article I, section 12, of the Oregon Constitution, and that all statements

made and evidence derived from the unlawful interrogation should have been suppressed. Specifically, defendant argues that McPherson interrogated him by asking if he would perform FSTs, and that the trial court erred in concluding that the request was not interrogation because it was a part of the routine booking process normally attendant to arrest and custody for DUII cases. We conclude that, because the record does not support the court's conclusion that the questions posed were part of the routine booking process, the court erred in denying defendant's motion to suppress. We further conclude that the error was not harmless with respect to defendant's conviction for DUII.[4]

We review the denial of a motion to suppress for legal error, deferring to the trial court's findings of historical fact if they are supported by constitutionally sufficient evidence in the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If findings of historical fact are not made on pertinent issues and there is evidence from which a finding could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion. *Id.*

Once suspects have invoked their *Miranda* rights, police interrogation must cease. *State v. Gillispie*, 295 Or App 702, 707-08, 436 P3d 65, *rev den*, 365 Or 194 (2019). "Interrogation," for purposes of Article I, section 12, means police statements or conduct "likely to elicit some type of incriminating response." *State v. Schmidtke*, 290 Or App 880, 885, 417 P3d 563 (2018) (internal quotation marks omitted). More particularly, because Article I, section 12, concerns the right not to be compelled to testify, interrogation means police statements or conduct likely to elicit (1) an incriminating response that is (2) testimonial; and (3) that the prosecution later may seek to introduce at trial. *State v. Shevyakov*, 311 Or App 82, 87, 489 P3d 580 (2021); *see also State v. Scott*, 343 Or 195, 203, 166 P3d 528 (2007). However, interrogation does not include questions "normally attendant to arrest and custody," even if the questions may be reasonably likely to elicit incriminating information, so long as they are not "designed to elicit an incriminatory

---

[4] Defendant does not assert that this error impacted the firearm conviction.

response." *State v. Cunningham*, 179 Or App 498, 501-03, 505, 40 P3d 535, *rev den*, 334 Or 327 (2002). As explained below, the "designed to elicit an incriminatory response" portion of the analysis drives the analysis in this case.

As we previously noted in *Shevyakov*, 311 Or App at 86-87, the case-by-case development of the law regarding field sobriety testing and interrogation has led to knots and imperfections in the law. *Shevyakov* took a run at untangling some of the snarls in the law, but—as should be the situation in any given case—was limited to the issues presented by the parties. One area of the law that could be untangled from that case was this: Following an invocation of *Miranda* rights by a suspect, a police officer "asking for consent to search, including requesting that a suspect perform the physical FSTs, constitutes impermissible interrogation unless the law precludes the use of a person's refusal against the person at trial." *Id.* at 90. Our rationale was rooted in the holding in *State v. Fish*, 321 Or 48, 56, 893 P2d 1023 (1995), that a request to perform FSTs is reasonably likely to elicit a refusal; a refusal is an incriminating testimonial response; and, therefore, the request is reasonably likely to elicit an incriminating response and thus constitutes interrogation. *Shevyakov*, 311 Or App at 89. As the parties here agree, however, *Shevyakov* does not provide a complete answer to the question currently before us.

The issues resolved in *Shevyakov* were limited by the arguments presented—and not presented—by the parties' briefing. *Shevyakov* did not consider whether a request to perform FSTs was nonetheless not interrogation under the exception for questions normally attendant to arrest and custody. *Id.* at 97 n 1 (Hadlock, J., concurring) (observing that the "state has not argued in this case that a request to perform physical FSTs is a question normally attendant to arrest and custody for DUII"). Given the parties' arguments in this case, we turn to that question now.

We recently examined the arrest and custody exception in some detail in *State v. Montiel-Delvalle*, 304 Or App 699, 468 P3d 995, *rev den*, 367 Or 387 (2020). We summarized the standard as follows:

"Routine booking questions, such as questions seeking biographical data necessary to complete booking or pretrial services, are not considered interrogation even if they are reasonably likely to elicit incriminating information. [*State v. Lanier*, 290 Or App 8, 12-13, 413 P3d 1020 (2018)]. However, that does not mean 'that any question asked during the booking process falls within th[e] exception.' *Cunningham*, 179 Or App at 504 (quoting *Pennsylvania v. Muniz*, 496 US 582, 602 n 14, 110 S Ct 2638, 110 L Ed 2d 528 (1990)). 'Although the exception for questions normally attendant to arrest and custody may include questions that are reasonably likely to elicit an incriminating response,' the exception does 'not give officers *carte blanche*. *Id*. at 503-04 (quoting *Muniz*, 496 US at 602 n 14). Questions designed to elicit incriminating information constitute interrogation, regardless of whether they are routine booking questions. *Lanier*, 290 Or App at 12. That is, for the booking question exception to apply, a question must be normally attendant to arrest and custody and 'not designed' to elicit incriminating information, even if it is reasonably likely to do so. [*State v. Moeller*, 229 Or App 306, 310-11, 211 P3d 364 (2009)]."

*Montiel-Delvalle*, 304 Or App at 712-13 (emphasis omitted).

The Oregon Supreme Court has explained, "[a]s proponent of the evidence of defendant's refusal [to take field sobriety tests], the state has the burden, after appropriate objection has been raised, of establishing the admissibility of the evidence." *Fish*, 321 Or at 59. In this case, as noted earlier, the trial court concluded that asking defendant if he would perform physical FSTs was a question normally attendant to arrest and custody, and that the tests were "part of the DUI process." However, the record contains no evidence regarding FSTs being a routine part of the booking process. McPherson did not testify about FSTs being a regular part of arrest and custody, nor did he or any other witness provide any indication that the request served some ministerial or administrative purpose. In previous cases where we have upheld a trial court's determination that a question did not constitute interrogation due to being attendant to arrest and custody, the record contained some evidence of the routine nature of the questions, and more specifically a noninvestigative purpose for the question. *See, e.g.*, *Montiel-Delvalle*, 304 Or App at 714-15 (noting that the officer's testimony,

including that he always asks medical questions, supported the trial court's finding that questions about the defendant's medical state that resulted in the defendant making incriminating statements about a motor vehicle accident were reasonably related to police administrative concerns regarding the defendant's medical condition at the time of arrest and booking); *Moeller*, 229 Or App at 312-13 (concluding that there was sufficient evidence supporting the trial court's determination that the defendant made incriminating statements about drug use in response to routine questions about medical issues while being booked into jail; holding that "[a] question about whether a detainee has a medical condition serves a standard administrative purpose, that is, to provide the police with the information necessary to attend to the detainee's medical needs while in police custody"); *Cunningham*, 179 Or App at 504-06 (observing that the trial court credited the officer's testimony that his question to the defendant of whether he had anything on his person that was sharp or could injure the officer during a lawful patdown was intended to prevent injury to the officer and not designed to elicit an incriminating response).

Here, the record contains no similar testimony from the arresting officer regarding a request to perform FSTs being a regular, routine part of arrest and custody. McPherson testified that there are some investigations that do not proceed beyond questions or FSTs in the field, and although he testified that he has requested a breath test in virtually every DUII arrest, he provided no such testimony regarding FSTs. Simply being part of the DUI investigatory process does not establish that the request to perform FSTs is normally attendant to arrest and custody. McPherson's testimony suggested that the purpose of the request to perform FSTs was to gather contemporaneous evidence of impairment, in light of the dissipating effects of alcohol, and he offered no administrative, ministerial, or safety-related explanation attendant to arrest and custody for the request.[5]

---

[5] Indeed, the state conceded in briefing and at oral argument that the purpose of performing field sobriety testing is to seize and preserve rapidly dissipating physical evidence of DUII. It is difficult to conceive of the request to perform the tests serving any other purpose. However, we do not at this point foreclose the possibility that a record could be developed under some circumstances that would support the applicability of the arrest and custody exception in some situations.

Accordingly, we conclude that the trial court erred in concluding that the request to perform FSTs did not constitute interrogation. *Shevyakov* establishes that a request to perform FSTs after a suspect has invoked their *Miranda* rights meets the definition of interrogation, and the record before us does not contain any evidence to support a conclusion that the request was not interrogation because it was attendant to arrest and custody.[6]

We acknowledge that the conclusion here, and in *Shevyakov*, is contrary to *State v. Higley*, 236 Or App 570, 237 P3d 875 (2010). In that case, we noted that the proposition that asking a person to take FSTs is interrogation had been "unequivocally rejected," and we, therefore, rejected it again with no further discussion. *Higley*, 236 Or App at 573. However, the cases cited in *Higley* in support of that observation did not address FSTs. *See South Dakota v. Neville*, 459 US 553, 563-64, 564 n 15, 103 S Ct 916, 74 L Ed 2d 748 (1983) (addressing admissibility of the defendant's refusal to submit to a blood alcohol test, and concluding in a footnote that such a request does not constitute interrogation, due to the request being highly regulated under state law and being presented in virtually the same words to all suspects); *State v. Gardner*, 236 Or App 150, 155, 236 P3d 742 (2010) (applying *Neville* to conclude that a request to submit to breathalyzer test was not interrogation because it is part of the normal process of arrest and custody); *Cunningham*, 179 Or App at 500-02 (addressing the normally attendant to arrest and custody exception with respect to asking whether a suspect had anything sharp that would injure the officer during a patdown). To the extent *Higley* extended the rationale regarding blood-alcohol tests and breath tests to FSTs without accounting for the differences between them, we now explicitly overrule that portion of *Higley*. In addition, in another opinion issued today, *State v. Cartier*, 348 Or

---

[6] To the extent that the state argues that Article I, section 12, rights are not implicated at all by a request to perform purely physical FSTs following a *Rohrs* admonishment, due to no testimonial response being sought, that argument is foreclosed by *Shevyakov*, and we reject the state's argument that *Shevyakov* was wrongly decided. *Shevyakov*, 311 Or App at 87 (concluding that "under current case law, asking [the] defendant to participate in the physical FSTs after he invoked his *Miranda* rights constituted impermissible interrogation that violated his rights under Article I, section 12").

App 602, ___, ___ P3d ___ (Apr 22, 2026) (slip op at 6-11), we also overrule *Gardner*, 236 Or App 150, and similarly reject the conclusion in *Higley* with respect to breath tests. The detailed discussion of and the effort to harmonize the applicable case law in *Shevyakov* is more convincing and thorough, and we conclude that this is an appropriate situation in which to overturn our precedent.[7] *See State v. Civil*, 283 Or App 395, 406, 388 P3d 1185 (2017) (noting the rigorous "plainly wrong" standard for overturning precedent is grounded in presumptive fidelity to *stare decisis*).

Finally, we conclude that the error was not harmless. We must affirm a judgment despite an error if there is little likelihood that the error affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). The stipulated-facts trial included evidence of defendant's performance on the FSTs. Additionally, the warrant to obtain defendant's blood, which showed a blood-alcohol level of 0.081 nearly six hours after driving, was granted based on McPherson's affidavit, which included the results of the FSTs. Because the evidence of defendant's performance on FSTs was used both as evidence against him and in obtaining evidence of his blood-alcohol level, we conclude that the failure to suppress the evidence was not harmless.

Nonetheless, the state argues that the blood-alcohol test results need not be suppressed, because the search was untainted by any constitutional violation relating to the FSTs. The state asserts that the warrant affidavit still established probable cause for the blood draw even without the FST results, and that the officer had probable cause to arrest defendant for DUII prior to requesting FSTs and would have sought a search warrant for defendant's blood even without the FSTs.

It is the state's burden to prove that the evidence obtained during the warranted search of defendant's blood

---

[7] We do not hold that an officer may never ask an arrestee to perform FSTs. A properly *Mirandized* suspect may be lawfully interrogated, assuming the arrestee has not invoked, and any incriminating responses may be admissible in a myriad of circumstances. However, once an individual has invoked their constitutional rights, interrogation must cease. Defendant here was arrested, *Mirandized*, and invoked his rights, yet the officer continued to interrogate him. Under those circumstances, the responses to unlawful interrogation must be suppressed.

was untainted by the prior unlawful conduct, *State v. DeJong*, 368 Or 640, 642, 497 P3d 710 (2021), an issue that the trial court did not address because it concluded that there had been no unlawful conduct. The question before us therefore is whether there is sufficient evidence from which the trial court could have found that, in the absence of the unlawful interrogation of defendant that led to his performance of FSTs, the blood sample would nonetheless have been obtained. *Id*. at 656-57. If the evidence is sufficient, we must remand the case to the trial court for it to engage in fact finding on that issue. *Id*. at 657 (noting that "[i]f there is legally sufficient evidence in the record to support such a finding, the proper disposition would be to remand to the trial court to engage in the necessary fact finding in the first instance").

We conclude that there is legally sufficient evidence from which the trial court could find that, even in the absence of the unlawful interrogation, the evidence of defendant's blood-alcohol level would have been lawfully discovered. McPherson testified that he developed probable cause to arrest defendant for DUII prior to transporting him to the station and that he would have arrested defendant for DUII even without the information from the FSTs. McPherson further testified that he would have sought the warrant for defendant's blood even if defendant had not performed FSTs. Based on that record, we conclude that there was legally sufficient evidence from which the trial court could find that, even in the absence of the prior illegalities, the state—through proper and predictable police procedures—could have sought and obtained a warrant to draw defendant's blood. Accordingly, we remand for further consideration of the proper scope of suppression.

Conviction on Count 1 reversed and remanded; otherwise affirmed.