602 April 22, 2026 No. 313

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JENNIFER NICOLE CARTIER,
*Defendant-Appellant.*

Washington County Circuit Court
22CR16394; A181403

Jenefer Stenzel Grant, Senior Judge.

Argued and submitted November 21, 2024.

Carla E. Edmondson, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

POWERS, J.

Reversed and remanded.

## POWERS, J.

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010(4), and reckless driving, ORS 811.140, following a bench trial. On appeal, she challenges the trial court's denial of her motions to suppress evidence that she declined to submit to field sobriety tests (FSTs) when she was stopped and declined to take a breath test at the police station after her arrest. We first conclude that the court did not err in denying defendant's motion to suppress her refusal to perform FSTs. We further conclude, however, that the court erred in denying her motion to suppress evidence of her refusal to take the breath test, because defendant was unlawfully interrogated without having been provided her *Miranda* rights prior to that interrogation. In so holding, we overrule *State v. Gardner*, 236 Or App 150, 236 P3d 742, *rev den*, 349 Or 173 (2010), and a portion of *State v. Higley*, 236 Or App 570, 237 P3d 875 (2010), because they are irreconcilable with the principles of Article I, section 12, of the Oregon Constitution and controlling case law on what constitutes interrogation.[1] Accordingly, we reverse and remand.

The facts are undisputed. Officer Adams responded to a non-injury crash involving defendant and another driver. Upon speaking with defendant, Adams noted an odor of alcohol and other signs of intoxication. He asked defendant if she would "be willing to submit to some standardized field sobriety tests," and defendant responded that she would not. Adams then told defendant:

"All right. I'm going to read you something real quick.

"* * * * *

"I'm going to ask you to submit to a series of purely physical field sobriety tests. The tests I will ask you to perform will not require you to reveal your thoughts, your beliefs, or your state of mind.

---

[1] Because this opinion overrules our existing precedents, the panel specifically advised all members of the court of the effect of its decision, but neither the Chief Judge nor a majority of the regularly elected or appointed judges referred, under ORS 2.570(5), the cause to be considered en banc.

"The tests will include the HGN test, the walk-and-turn test, the one-leg stand test, and any other test I will be willing to—I will be asking you to perform. The refusal to submit to the purely physical test could be used against you in a civil or criminal court action that arises out of the allegations that you are under the influence of intoxicants. Would you be—"

Before Adams completed his question, defendant responded, "I will refuse."[2] Adams subsequently arrested defendant for DUII.

Defendant was transported to the police station and was asked to physically submit to a breath test. There is no dispute that defendant had not been provided with her *Miranda* rights at that point. Adams read an implied-consent form to defendant, which generally explained the consequences of refusing to take the breath test, finishing with the question: "Will you provide physical cooperation to submit to a breath/blood test?" Defendant responded, "No."

Prior to trial, defendant moved to suppress evidence of both her refusal to perform physical FSTs and her refusal to provide physical cooperation with the breath test. The trial court denied both motions. The court then found defendant guilty based on a stipulated-facts trial, including the facts that defendant "refused to perform field sobriety tests even after being read" an admonishment based on *State v. Rohrs*, 157 Or App 494, 970 P2d 262 (1998), *aff'd by an equally divided court*, 333 Or 397 (2002), and defendant "refused to provide a breath sample even after being read her implied consent."[3] Defendant was also acquitted of one count of second-degree criminal mischief after a bench trial.

On appeal, defendant's main challenges are to the trial court's rulings with respect to the admissibility of her refusal to perform FSTs and her refusal to submit to the

---

[2] The transcript indicates that defendant's response was indiscernible, but it is clear from the audio of the body cam footage. The parties agree that defendant refused to perform the tests.

[3] An admonishment based on *Rhors* is a warning that a refusal to submit to physical tests may be used against the individual in court. *State v. Koch*, 267 Or App 322, 324, 341 P3d 112 (2014).

breath test.[4] We review the denial of a motion to suppress for errors of law. *State v. Maciel-Figueroa*, 361 Or 163, 165, 389 P3d 1121 (2017).

## REFUSAL TO PERFORM PHYSICAL FSTs

In her first assignment of error, defendant argues that evidence of her refusal to perform FSTs should not have been admitted, because the officer did not unambiguously request only physical compliance with the tests, and his request could have been understood to be asking for consti- tutionally significant consent to search. Defendant asserts that her withholding of consent, *i.e.*, her invocation of her right not to incriminate herself, was not admissible against her.

Subsequent to defendant's trial, we have discussed the standard that applies to the admissibility of an individ- ual's refusal to perform FSTs, in *State v. Hamilton*, 330 Or App 258, 543 P3d 704 (2024), and *State v. Anderson*, 341 Or App 756, 574 P3d 969 (2025). In *Anderson*, we summarized the standard as follows:

"Because breath tests and FSTs are searches within the meaning of Article I, section 9, constitutional protections apply. Refusing to consent to a search, such as a breath test or an FST, invokes the person's constitutional right to insist that the government obtain a warrant, and thus evidence of the refusal may not be admitted at trial as evidence of their guilt. To introduce evidence of a defendant's refusal to perform a breath test or FSTs, the state must demon- strate that the request could reasonably be understood only as a request to provide physical cooperation and not as a request for constitutionally-significant consent to search. If the request was ambiguous—that is, if it can reasonably be understood as either asking [the] defendant to physically submit to a test that was justified by a warrant exception, or as asking [the] defendant for his, her, or their consent to search, thereby establishing a warrant exception, then the state has not met its burden, and evidence of the refusal to perform a breath test or FST is inadmissible."

---

[4] In her third and fourth assignments of error, defendant challenges the trial court's imposition of special conditions of probation that were not announced during sentencing. We need not reach those arguments, however, because we are reversing defendant's convictions and remanding.

341 Or App at 761-62 (internal quotation marks and citations omitted). Therefore, the question before us is whether Adams's request to defendant was unambiguously asking only for physical cooperation. We conclude that it was.

As was the case in *Anderson*, defendant twice refused to perform FSTs. In this case, Adams's first request, which asked defendant to perform "some standardized field sobriety tests," was ambiguous. *See Anderson*, 341 Or App at 762-63 (concluding that the officer's first request of whether the defendant "would mind doing some field sobriety tests" was ambiguous and the results were correctly suppressed). Defendant asserts that the subsequent *Rohrs* admonishment and explanation that the tests were purely physical did not cure the earlier ambiguity. Based on *Anderson*, we disagree with defendant's argument.

In *Anderson*, we held that the fact that the officer initially made an ambiguous request "did not prohibit the officer from clarifying that the request was for physical cooperation in the form of the *Rohrs* admonishment." 341 Or App at 763. We noted that "[a]n alternate result would mean that once an officer asks a defendant to agree to perform FSTs, there would be no steps an officer could take to clarify that the request was for physical cooperation." *Id.* at 764.

The officer's clarification here was unambiguous. Following defendant's initial refusal to perform "some standardized field sobriety tests," Adams provided defendant a form of a *Rohrs* admonishment, informing her twice that she was being asked to perform "purely physical" tests and that she was not required to reveal her thoughts, beliefs, or state of mind. This scenario is indistinguishable from *Anderson*, where the officer made clear following the initial refusal that the request was for physical cooperation and not consent to a search. Unlike in *Hamilton*, where the officer's requests were muddled by suggestions that the tests were voluntary and riddled with attempts to convince the defendant to voluntarily consent to the search, 330 Or App 269-70, the request here was not ambiguous, and defendant's

refusal was therefore admissible against her.[5] Accordingly, we reject defendant's first assignment of error.

### Refusal to perform breath test

In her second assignment of error, defendant asserts that the trial court erred in denying her motion to suppress her statement that she would refuse to submit to a breath test. She argues that the request to perform the breath test constituted interrogation under Article I, section 12, of the Oregon Constitution and her response should have been suppressed because she had not been advised of her *Miranda* rights prior to interrogation. In so doing, defendant asserts that our decision in *State v. Gardner*, 236 Or App 150, 236 P3d 742, *rev den*, 349 Or 173 (2010)—which held that such a request does not constitute interrogation because it is part of the normal arrest and booking procedure—is plainly wrong and should be overturned. *See State v. Civil*, 283 Or App 395, 406, 388 P3d 1185 (2017) (noting the rigorous "plainly wrong" standard for overturning precedent is grounded in presumptive fidelity to *stare decisis*). For the reasons explained below, we agree with defendant's argument that *Gardner* was incorrectly decided, and therefore we overturn it. Under the circumstances presented in this case, defendant's refusal to perform the breath test should have been suppressed because she was unlawfully interrogated without having been advised of her rights.

We begin with *Gardner*. In that case, following a traffic stop and arrest for DUII, the defendant was transported to the local jail. Without giving her *Miranda* warnings, the arresting officer asked the defendant if she would take a breath test and advised her of the consequences of refusing. 236 Or App at 152-53. Upon being directly asked if she would consent to the test "right now," the defendant responded, "I am afraid I will fail because I drank two glasses of wine, so I am going to refuse." *Id.* at 153. The

---

[5] It is immaterial in these circumstances that the trial court, in issuing its ruling, did not distinguish between defendant's initial refusal following the first request and her refusal following the *Rohrs* admonishment. The stipulated fact for the bench trial was that defendant refused to perform field sobriety tests even after being given a *Rohrs* admonishment. It was therefore the second refusal, after the unambiguous request for physical compliance only, that was admitted against defendant for purposes of the trial.

trial court granted the defendant's motion to suppress her statements, based on the officer's failure to advise her of her *Miranda* rights and the state's failure to prove that her admission of having had wine was made voluntarily. *Id.*

On appeal, we reversed, concluding that the officer's request did not constitute "interrogation." In so doing, we noted the definition of interrogation set forth by the Supreme Court of the United States in *Rhode Island v. Innis*, 446 US 291, 100 S Ct 1682, 64 L Ed 2d 297 (1980), as adopted by our court in *State v. Bradbury*, 80 Or App 613, 616, 723 P2d 1051, *rev den*, 302 Or 342 (1986):

> "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."

*Gardner*, 236 Or App at 154 (internal quotation marks omitted). We then observed that, in *State v. Cunningham*, 179 Or App 498, 40 P3d 535, *rev den*, 334 Or 327 (2002), we had implicitly adopted the Court's approach to what questions are "normally attendant to arrest and custody," *Gardner*, 236 Or App at 155, and went on to explain:

> "In *South Dakota v. Neville,* 459 US 553, 564 n 15, 103 S Ct 916, 74 L Ed 2d 748 (1983), the Court explained that a 'police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*' because it is a question 'normally attendant to arrest and custody.' The Court reasoned that the question came within the exception because it was highly regulated by state law and presented in virtually the same words to all suspects. *Id.*"

*Id.* We, therefore, concluded in *Gardner* that:

> "[E]ven if we were to conclude that the officer's question asking whether [the] defendant would take the breath test was intended and likely to elicit an incriminating statement *** the question is not 'interrogation' for purposes of *Miranda* because it is part of the normal process of arrest and custody."

*Id.* Accordingly, we concluded that the trial court erred in suppressing evidence of the defendant's refusal to submit to the breath test. *Id.*

On reflection, our analysis in *Gardner* was incomplete and partially inaccurate. Throughout our case law addressing the "arrest and custody" exception, we have repeatedly emphasized that questions that are designed to elicit an incriminatory response do qualify as interrogation—even if the questions are routinely asked during arrest and custody—and therefore require *Miranda* warnings. *Cunningham*, 179 Or App at 505; *see also State v. Lanier*, 290 Or App 8, 10, 413 P3d 1020 (2018) (explaining that, "because the question asked by the officer was designed to elicit incriminating information, *Miranda* warnings were required"); *State v. Moeller*, 229 Or App 306, 311, 211 P3d 364 (2009) ("Questions normally attendant to arrest and custody, even if reasonably likely to elicit incriminating information, are not subject to the requirement to give *Miranda* warnings so long as they are not intended or designed to elicit such information."). In *Gardner*, we failed to consider that important qualifier to the arrest and custody exception and inaccurately concluded that the officer's intent did not matter. Rather, we adopted, without discussion, the Court's footnote observation that a police inquiry about taking a blood-alcohol test is not interrogation because it is normally attendant to arrest and custody and highly regulated by state law. *See Gardner*, 236 Or App at 155 (citing *Neville*, 459 US at 564 n 15).

Upon closer inspection, the Court in *Neville* did not consider the intent or design behind the request in reaching its observation tucked into a footnote that blood-alcohol requests qualified for the arrest and custody exception to interrogation. Indeed, whether the request qualified as interrogation was not at issue in the case. The defendant in *Neville* had been read his *Miranda* rights and subsequently refused to submit to a blood-alcohol test. *Neville*, 459 US at 555-56. The issue before the Court was whether the defendant's refusal could be used against him as evidence of intoxication or whether it must be suppressed because the response had been coerced by the officer. *Id.* at 562-63. The

Court concluded that the defendant's communicative act of refusing to take the test had not been coerced because the officers had given him a choice between submitting to the test or refusing. *Id.* at 563. It was at the conclusion of that analysis that the Court added the footnote that we quoted in *Gardner*:

> "In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*. As we stated in [*Innis*, 446 US at 301], police words or actions 'normally attendant to arrest and custody' do not constitute interrogation. The police inquiry here is highly regulated by state law, and is presented in virtually the same words to all suspects. It is similar to a police request to submit to fingerprinting or photography. Respondent's choice of refusal thus enjoys no prophylactic *Miranda* protection outside the basic Fifth Amendment protection. *See generally* Arenella, Schmerber *and the Privilege Against Self-Incrimination: A Reappraisal*, 20 Am Crim L Rev 31, 56-58 (1982)."

*Neville*, 459 US at 564 n 15.

Because the Court in *Neville* did not analyze police inquiries about blood-alcohol tests under the test that has been adopted in Oregon for whether something constitutes interrogation for purposes of Article I, section 12, or is subject to an exception to interrogation, we conclude that we were wrong in *Gardner* to adopt the Court's conclusion without further scrutiny. As explained further below, after engaging in the complete analysis, we conclude that it is appropriate to overturn *Gardner* because it is incompatible with Article I, section 12, principles on what constitutes interrogation. *See Civil*, 283 Or App at 406 (noting our rigorous "plainly wrong" standard involves examining the reasoning that led us to the earlier conclusion and "cannot be made *** without an appreciation of what we did not address" (emphasis omitted)).

Furthermore, we relied on *Gardner* in *State v. Higley*, 236 Or App 570, 573, 237 P3d 875 (2010), in summarily concluding that the proposition that asking a person to take a breath test is interrogation had been "unequivocally rejected." Because that conclusion in *Higley* relied on

*Gardner* and *Neville*, which we have explained are not consistent with our case law on what constitutes interrogation under the state constitution, we now overturn that portion of *Higley* as well.[6] We conclude that this is an appropriate situation in which to overturn our precedents.

Without relying on *Gardner*, we thus consider anew whether a request to physically comply with a breath test constitutes interrogation. As noted above, interrogation for purposes of Article I, section 12, protection includes not only express questioning but also "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Bradbury*, 80 Or App at 616 & n 1 (citing *Innis*, 446 US at 301-02, and adopting the *Innis* definition for state constitutional purposes). More particularly, because Article I, section 12, concerns the right not to be compelled to testify, interrogation means statements or conduct likely to elicit (1) an incriminating response that is (2) testimonial and (3) that the prosecution later may seek to introduce at trial. *State v. Shevyakov*, 311 Or App 82, 87, 489 P3d 580 (2021); *see also State v. Scott*, 343 Or 195, 203, 166 P3d 528 (2007).

The refusal to physically comply with a breath test meets all three criteria. In the context of field sobriety tests, a suspect's refusal to perform those tests can lead to the inferential conclusion that the refusal was because the suspect did not believe the suspect would pass the test. *See State v. Fish*, 321 Or 48, 56, 893 P2d 1023 (1995) (explaining that, "[i]n offering an individual's refusal to perform field sobriety tests into evidence, the state wants the jury to infer from the fact of an individual's refusal that he or she is saying 'I refuse to perform field sobriety tests because I believe I will fail them'"). The same possible inference extends to the refusal to take a breath test. *See State v. Brandes*, 317 Or App 672, 690-91, 506 P3d 431 (2022) (concluding that the erroneous admission of the defendant's refusal to submit to a breath test was not harmless error in

---

[6] In another case issued today, *State v. Delgado-Rodriguez*, 348 Or App 616, ___, ___ P3d ___ (Apr 22, 2026) (slip op at 13-14), we also have overturned that conclusion in *Higley* as it pertains to field sobriety tests.

light of the state's argument that the only reason a person would refuse to take the breath test was because "they know they're not going to pass" and based on the jury instruction that allowed the jury to infer that the defendant was intoxicated based on the defendant's refusal). Therefore, the refusal is an incriminating response. By that same logic, the response is testimonial because it may communicate the person's state of mind: that they believe they will fail the test. *Fish*, 321 Or at 56.

On the issue of admissibility at trial, the Supreme Court's opinion in *State v. Banks*, 364 Or 332, 434 P3d 361 (2019), demonstrates that the response to a request to take a breath test is generally admissible for purposes of our interrogation analysis. In *Banks*, the Supreme Court went to great lengths to note the difference between a request for consent to a search and a request for purely physical compliance with an otherwise lawful search. *Banks*, 364 Or at 340-43. If an individual consents, there is a legal basis for the search without the officer having to seek a warrant or establish some other justification to search without a warrant. Despite the implied consent laws, drivers have the right to revoke consent to such a search.[7] *Id.* at 337-39. A request for physical compliance, on the other hand, when an officer has some other constitutional basis for the search, does not carry the same constitutional significance in terms of the individual's response. *Id.* at 343. In discussing the admissibility of those two distinct categories of evidence, the court explained:

--------

[7] The court explained:

"As this court recently explained in *State v. Swan*, 363 Or 121, 420 P3d 9 (2018), decided after the state filed its brief in this case, 'ORS 813.100(2) expressly recognizes that a person arrested for DUII may decide, at the point of arrest, to refuse to submit to a breath test and that the person's refusal limits the state's ability to determine his or her BAC under the implied-consent statutes.' *Id.* at 139. Specifically, ORS 813.100(2) provides that, if a person arrested for DUII refuses to submit to a breath test, '[n]o chemical test of the person's breath *** shall be given under the implied-consent statutes, although the state can always apply for a warrant to determine a suspect's BAC.' *Id.* Relying on that statutory provision, we rejected the state's argument that an individual who drives on public roads has no legal right to refuse a breath test. *Id.* at 138-39. We concluded that, at the time of arrest, 'a DUII suspect does have a statutory right to decide whether to submit or refuse to submit to a breath test.' *Id.* at 145."

*Banks*, 364 Or at 338 (ellipses in *Banks*; some internal quotation marks omitted).

"[T]he invocation of a constitutional right cannot be admitted at trial as evidence of a defendant's guilt. However, no similar bar applies when an officer seeks only a driver's physical cooperation in conducting a constitutionally-authorized search."

*Id.* at 342. In this case, Adams read defendant a form that made clear that the officer was asking only for physical cooperation, and not constitutionally significant consent. Therefore, the response was one that generally would be admissible in court, as it was not evidence of defendant invoking her constitutional right to withhold consent.

Finally, in *Shevyakov*, 311 Or App at 89, we noted that, although the odds would vary, a refusal is a reasonably likely response to a request to perform field sobriety tests, just as it is reasonably likely that someone would consent, noting that those were "the usual—and only responsive—responses" to such a request.[8] Therefore, all elements of the definition of "interrogation" are satisfied: the request to physically comply with the breath test was reasonably likely to elicit an incriminating response (of "no") from defendant that was testimonial and that the prosecution could later seek to introduce at trial.

We turn now to the arrest and custody exception. We recently examined the arrest and custody exception in some detail in *State v. Montiel-Delvalle*, 304 Or App 699, 468 P3d 995, *rev den*, 367 Or 387 (2020). We summarized the standard as follows:

"Routine booking questions, such as questions seeking biographical data necessary to complete booking or pretrial services, are not considered interrogation even if they are reasonably likely to elicit incriminating information. *Lanier*, 290 Or App at 12-13. However, that does not mean 'that any question asked during the booking process falls within th[e] exception.' *Cunningham*, 179 Or App at 504 (quoting *Pennsylvania v. Muniz*, 496 US 582, 602 n 14, 110 S Ct 2638, 110 L Ed 2d 528 (1990)). 'Although the exception for questions normally attendant to arrest and custody

---

[8] We note that our opinion in *Shevyakov* did not always distinguish between requests for constitutionally significant consent and purely physical compliance. Nonetheless, the logic with respect to reasonably likely responses to the query applies to the limited circumstances before us in this case.

may include questions that are reasonably likely to elicit an incriminating response,' the exception does 'not give officers *carte blanche*. *Id*. at 503-04 (quoting *Muniz*, 496 US at 602 n 14). Questions designed to elicit incriminating information constitute interrogation, regardless of whether they are routine booking questions. *Lanier*, 290 Or App at 12. That is, for the booking question exception to apply, a question must be normally attendant to arrest and custody and 'not designed' to elicit incriminating information, even if it is reasonably likely to do so. *Moeller*, 229 Or App at 310-11."

*Montiel-Delvalle*, 304 Or App at 712-13 (emphases omitted).

When the state seeks admission of a defendant's refusal to take a breath test, the state, as the proponent of the evidence, has the burden to establish its admissibility. *Banks*, 364 Or at 343 ("As proponent of the evidence of [the] defendant's refusal to take field sobriety tests, the state has the burden, after appropriate objection has been raised, of establishing the admissibility of the evidence." (citing *Fish*, 321 Or at 59)).

At trial, the state did not argue that the request to take a breath test qualified for the arrest and custody exception—the trial court allowed defendant's response to be admitted on the basis that her ultimate refusal was not testimonial. Therefore, no record was developed as to the purpose for making the request, or whether it was designed to elicit an incriminating response.[9] Given that the officer's actions otherwise constituted interrogation, and there is no debate that defendant was in custody and had not been read her *Miranda* rights, the state did not meet its burden to establish that her responses to interrogation were admissible. Accordingly, the trial court erred in denying defendant's motion to suppress her refusal to take the breath test because it violated defendant's rights under Article I, section 12, given that she was not provided *Miranda* warnings.

Reversed and remanded.

___

[9] Although it is difficult to conceive of the request to perform a breath test serving a noninvestigatory, ministerial purpose that would justify application of the arrest and custody exception, given the record that was developed in this case, we need not reach whether a record could be developed under some circumstances that would support the applicability of the arrest and custody exception.